ROB BONTA
Attorney General of California
JON S. ALLIN
Supervising Deputy Attorney General
JEREMY DUGGAN
Deputy Attorney General
State Bar No. 229854
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone:  (916) 210-6008
 Fax:  (916) 324-5205
 E-mail:  Jeremy.Duggan@doj.ca.gov
*Attorneys for Defendants*
*State of California, California Department*
*of Corrections and Rehabilitation, R. Diaz,*
*K. Oglesby and C. Tampkins*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| **ARDELL MCDUFFIE; DANIEL CESARIO RAMIREZ, and DEMETRIUS ROGERS,**<br><br>Plaintiffs,<br><br>v.<br><br>**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; STATE OF CALIFORNIA; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS, in her individual and official capacities; KERRY OGLESBY, in her individual and offical capacities; and DOES 1-100 inclusive.,**<br><br>Defendants. | Case No.:  5:21-cv-00824<br><br>**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a); REQUEST FOR SCREENING ORDER UNDER 28 U.S.C. § 1915A(a); AND REQUEST FOR EXTENSION OF TIME**<br><br>[Removed from the Superior Court of California, County of Riverside, Case No. CVRI 2101568] |

**TO THE CLERK OF THE COURT:**

**PLEASE TAKE NOTICE** that that pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendants California Department of Corrections and Rehabilitation, R. Diaz, K. Oglesby and C. Tampkins ("Defendants") remove to this Court the state-court action described below.

## THE REMOVED ACTION

1.  On March 29, 2021, Plaintiffs filed an action in the Riverside County Superior Court, entitled *Ardell McDuffie, et al. v. California Department of Corrections and Rehabilitation, et al.*, Case Number CVRI 2101568.  A copy of the complaint is attached as Exhibit A.  A copy of the documents served on Defendants is attached as Exhibit B.

2.  Defendant State of California first received the complaint in this matter when it arrived by personal service at Defendants' counsel's office on April 14, 2021.  All Defendants who have been served in this matter consent to removal.

## STATEMENT OF JURISDICTION

3.  This Court has original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  This Court also has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

4.  Plaintiffs McDuffie, Ramirez, and Rogers are state prison inmates. (Compl. ¶ 1.)  The complaint alleges that prison staff did not do enough to prevent the spread of COVID-19 at California Rehabilitation Center, and that Plaintiffs contracted COVID-19.  (*Id.* ¶¶ 1-2.)  Plaintiffs specifically assert causes of action for "Conditions of Confinement — Eighth Amendment," "Conditions of Confinement — Fourteenth Amendment," and "*Monell* Liability," all under 42 U.S.C. § 1983.  (*Id.* at 13-19.)  This Court has original jurisdiction over those

claims because they arise under the laws of the United States and the United States Constitution.

5.  Plaintiffs further assert state-law claims for "Dangerous Condition of Public Property," "Negligence," and "Negligent Infliction of Emotional Distress." (*Id.* at 20-25.)  Those claims are based on the same facts as Plaintiffs' federal-law claims, and accordingly this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

## VENUE

6.  Venue is proper in the United States District Court for the Central District of California, Eastern Division, because Plaintiffs filed their complaint in the Superior Court of the State of California, County of Riverside.  28 U.S.C. §§ 1446(a), 84(b), General Order No. 21-01 § I.B.1.b.

## NOTICE TO PLAINTIFF

7.  In compliance with 28 U.S.C. § 1446(d), Defendants will promptly provide written notice of this removal to Plaintiff and file a copy of this Notice of Removal with the clerk of the Riverside County Superior Court.

## REQUEST FOR SCREENING ORDER AND EXTENSION OF TIME

8.  Defendants request that the Court screen the complaint for cognizable claims under 28 U.S.C. § 1915A and dismiss the claims that are frivolous or malicious, fail to state a claim upon which relief can be granted, or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)-(2).  In the event any part of the complaint survives screening, Defendants respectfully request thirty days from the date of service of the screening order to file a responsive pleading.

/ / /

/ / /

/ / /

1    Dated:  May 10, 2021

2                                                    Respectfully submitted,

                                                     ROB BONTA
3                                                    Attorney General of California
                                                     JON S. ALLIN
4                                                    Supervising Deputy Attorney General

5                                                    */s/ Jeremy Duggan*

6                                                    JEREMY DUGGAN
                                                     Deputy Attorney General
7                                                    *Attorneys for Defendants*
                                                     *State of California, California*
8                                                    *Department of Corrections and*
                                                     *Rehabilitation, R. Diaz, K. Oglesby*
                                                     *and C. Tampkins*
9

10   SA2021301891
     35066204.docx
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

# EXHIBIT A

COPY

1  Carney R. Shegerian, State Bar No. 150461
   CShegerian@Shegerianlaw.com
2  Anthony Nguyen, State Bar No. 259154
   ANguyen@Shegerianlaw.com
3  Cheryl A. Kenner. State Bar No. 305758
   CKenner@Shegerianlaw.com
4  **SHEGERIAN & ASSOCIATES, INC.**
   145 South Spring Street, Suite 400
5  Los Angeles, California 90012
   Telephone Number:      (310) 860-0770
6  Facsimile Number:      (310) 860-0771

7  Attorneys for Plaintiffs ARDELL MCDUFFIE,
   DANIEL CESARIO RAMIREZ, and
8  DEMETRIUS ROGERS

9

10

11

12

13

14  ARDELL MCDUFFIE; DANIEL CESARIO
    RAMIREZ; and DEMETRIUS ROGERS;
15                 Plaintiffs,
16        vs.
17  CALIFORNIA DEPARTMENT OF
    CORRECTIONS AND REHABILITATION;
18  STATE OF CALIFORNIA; CDCR
    SECRETARY RALPH DIAZ, in his
19  individual and official capacities; WARDEN
    CYNTHIA Y. TAMPKINS, in her individual
20  and official capacities; KERRY OGLESBY, in
    her individual and official capacities; and
21  DOES 1-100 inclusive,
22                 Defendants.
23

24

25

26

27

28

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 2 9 2021

L. VILLANUEVA

SUPERIOR COURT OF STATE OF CALIFORNIA

FOR THE COUNTY OF RIVERSIDE

Case No.:  **CVRI**  **2 1 0 1 5 6 8**

**COMPLAINT FOR DAMAGES:**

(1)  **42 U.S.C. § 1983;**

(2)  **42 U.S.C. § 1983 [*MONELL LIABILITY*];**

(3)  **DANGEROUS CONDITION ON PUBLIC PROPERTY [GOV. CODE § 835];**

(4)  **NEGLIGENCE; and**

(5)  **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**DEMAND FOR JURY TRIAL**

-1-
COMPLAINT FOR DAMAGES

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................................................................. 2

II.    PARTIES AND JURISDICTION ......................................................................................... 2

III.   GENERAL ALLEGATIONS ............................................................................................... 6

IV.    FIRST CAUSE OF ACTION ............................................................................................. 13

       42 U.S.C. § 1983 ................................................................................................................ 13

V.     SECOND CAUSE OF ACTION ........................................................................................ 17

       *MONELL* LIABILITY PURSUANT TO 42 U.S.C. § 1983 ............................................ 17

VI.    THIRD CAUSE OF ACTION ............................................................................................ 20

       DANGEROUS CONDITION ON PUBLIC PROPERTY [GOV. CODE § 835] ............... 20

VII.   FOURTH CAUSE OF ACTION ........................................................................................ 22

       NEGLIGENCE .................................................................................................................... 22

VIII.  FIFTH CAUSE OF ACTION ............................................................................................. 23

       NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ............................................ 23

IX.    PRAYER FOR RELIEF ..................................................................................................... 25

X.     DEMAND FOR JURY TRIAL .......................................................................................... 25

-i-

**COMPLAINT FOR DAMAGES**

1     Plaintiffs ARDELL MCDUFFIE, DANIEL CESARIO RAMIREZ, and DEMETRIUS ROGERS

2 (collectively, "Plaintiffs), by and through their attorneys, Shegerian & Associates, Inc., hereby file this

3 Complaint against Defendants CALIFORNIA DEPARTMENT OF CORRECTIONS AND

4 REHABILITATION; STATE OF CALIFORNIA; CDCR SECRETARY RALPH DIAZ, in his

5 individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS, in her individual and official

6 capacities; KERRY OGLESBY, in her individual and official capacities; and DOES 1-100 inclusive,

7 (collectively, "Defendants"), and states as follows:

8                     **I.   INTRODUCTION**

9    1.     Plaintiffs are and/or were inmates at the California Rehabilitation Center ("CRC") in

10 Norco, California in Riverside County when the novel coronavirus disease 2019 ("COVID-19") began

11 spreading at SQSP. All Plaintiffs contracted COVID-19 while housed at CRC and continue to have

12 lingering symptoms since recovering from COVID-19.

13    2.     Despite the danger of the spread of COVID-19 at CRC, Defendants failed to implement

14 policies and procedures to prevent the spread of COVID-19 in CRC.

15              **II.   PARTIES AND JURISDICTION**

16    3.     Plaintiffs ARDELL MCDUFFIE, DANIEL CESARIO RAMIREZ, and DEMETRIUS

17 ROGERS are persons who, at all times relevant to this Complaint, were domiciled in California and were

18 inmates at the California Rehabilitation Center ("CRC") in Norco, California, within Riverside County.

19    4.     Plaintiffs are informed and believe and thereon allege that Defendant STATE OF

20 CALIFORNIA (hereinafter "STATE") is responsible for the actions, omissions, policies, procedures,

21 practices, and customs of its various employees, agents and agencies, including the CALIFORNIA

22 DEPARTMENT OF CORRECTIONS AND REHABILITATION (hereinafter "CDCR"), and their

23 agents and employees, and are sued pursuant to the California Tort Claims Act, California Government

24 Code sections 910, *et seq.* for the acts and omissions of the individually named and fictitiously named

25 public employees and agents, and each of them. At all times relevant to the acts alleged herein, Defendant

26 STATE was responsible for assuring that the actions, omissions, policies, procedures, practices and

27 customs of the CDCR, their employees and agents, as well as its own employees and agents, complied

28 with the laws of STATE of California and the Constitution of the United States.

5.      Plaintiffs are informed and believe and thereon allege that Defendant CDCR is the chief law enforcement agency for Defendant STATE. Defendant CDCR is also in charge of, and responsible for, the prison housing of all persons convicted of crimes, serving a state prison sentence.

6.      The CDCR operates and manages STATE prison facilities, and is, and was at all times mentioned herein, responsible for the actions and/or inactions and the policies, procedures and practices/customs of CRC. By incarcerating individuals and depriving them of the ability to care for and protect themselves, CDCR created and maintained a special relationship with its inmates and is responsible for ensuring the safety of the inmates incarcerated or detained in its facilities.

7.      Plaintiffs are informed and believe and thereon allege that Defendant, RALPH DIAZ ("DIAZ"), is an individual domiciled in California, and was, at all times relevant hereto, employed as the Secretary of the CDCR, acting under the color of law and in the course and scope of his employment for Defendant STATE. He was charged by law and was responsible for the administration of Defendant CDCR and for the supervision, training and hiring of persons, agents and employees working within CDCR, including but not limited to wardens and correctional officers. Defendant DIAZ is and was responsible for the promulgation of the policies and procedures and allowances of the practices/customs pursuant to which the acts of the employees of CRC alleged herein were committed. Defendant DIAZ was responsible to ensure appropriate staffing levels for custodial staff were maintained at the prison facilities. Defendant DIAZ and the other defendants have been deliberately indifferent to the danger of the spread of coronavirus disease 2019 ("COVID-19") within CRC, at least in part, by exceedingly inadequate inmate classification procedures, and inadequate employee screening procedures. As a result of this deliberate indifference, as in this case, Plaintiffs were exposed to COVID-19. Defendant DIAZ is being sued in his individual and official capacities.

8.      Defendant CYNTHIA Y. TAMPKINS ("TAMPKINS") is, and was at all relevant times mentioned herein, Warden of the California Institution for Men. Defendant TAMPKINS is and was responsible for the training and supervision of all CRC employees and/or agents. Defendant TAMPKINS is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the employees of CRC alleged herein were committed. Defendant TAMPKINS was responsible to ensure appropriate staffing levels for custodial staff were

**COMPLAINT FOR DAMAGES**

1  maintained at CRC she commanded. Defendant TAMPKINS and the other defendants have been
2  deliberately indifferent to the danger of the spread of COVID-19 within CIM, at least in part, by
3  exceedingly inadequate inmate classification procedures, and inadequate employee screening procedures.
4  As a result of this deliberate indifference, as in this case, Plaintiffs were exposed to COVID-19. Defendant
5  TAMPKINS is being sued in her individual and official capacities.

6      9.    Defendant KERRY OGLESBY ("OGLESBY") is, and was at all relevant times mentioned
7  herein, the healthcare Chief Executive Officer of CRC. Defendant OGLESBY is and was responsible for
8  the training and supervision of all medical staff and nurses at CRC. Defendant OGLESBY is and was
9  responsible for the promulgation of the policies and procedures and allowance of the practices/customs
10 pursuant to which the acts of the employees of CRC alleged herein were committed. Defendant
11 OGLESBY was responsible to ensure appropriate medical care and safe protocols for containing the
12 spread of infectious diseases were maintained at CRC. Defendant OGLESBY and the other defendants
13 have been deliberately indifferent to the danger of the spread of COVID-19 within CRC, at least in part,
14 by exceedingly inadequate inmate classification procedures, and inadequate employee screening
15 procedures. As a result of this deliberate indifference, as in this case, Plaintiffs were exposed to COVID-
16 19. Defendant OGLESBY is being sued in her individual and official capacities.

17     10.    At all times mentioned herein, Defendants DOES 1-20 were employed as Corrections
18 Officers for Defendant STATE, and will be referred to in this Complaint as "Corrections Officer
19 Defendants." Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES
20 1-20, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this
21 complaint to allege their true names when ascertained. Defendants DOES 1-20 are sued individually and
22 in their capacity as corrections deputies for STATE. As part of their duties, Corrections Officer
23 Defendants DOES 1-20 screened and classified inmates and determined where they should be housed,
24 whether they should be housed with other inmates, and other classification decisions. By engaging in the
25 conduct described here, Corrections Officer Defendants DOES 1-20 acted under the color of law and in
26 the course and scope of their employment for Defendant STATE. By engaging in the conduct described
27 here, Corrections Officer Defendants DOES 1-20 exceeded the authority vested in them as corrections
28 deputies under the United States Constitution and as employees of STATE. Corrections Officer

1  Defendants DOES 1-20 and the other defendants have been deliberately indifferent to the danger of the
2  spread of COVID19 within CRC, at least in part, by exceedingly inadequate inmate classification
3  procedures. As a result of this deliberate indifference, as in this case, Plaintiffs were exposed to COVID-
4  19. Corrections Officer Defendants DOES 1-20 are being sued in their individual and official capacities.

5       11.     At all times mentioned herein, Defendants DOES 21-30 were employed as healthcare
6  providers, for Defendant STATE, and will be referred to in this Complaint as "Healthcare Provider
7  Defendants." Included in those duties was determination of whether inmates suffered from contagious
8  illnesses, who would require segregation from other inmates to prevent the spread of illness among
9  inmates within CRC. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein
10  as DOES 21-30, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will
11  amend this complaint to allege their true names when ascertained. Healthcare Provider Defendants DOES
12  21-30 are sued individually and in their capacity as healthcare providers for STATE. By engaging in the
13  conduct described here, Healthcare Provider Defendants DOES 21-30 acted under the color of law and
14  in the course and scope of their employment for Defendant STATE. By engaging in the conduct described
15  here, Healthcare Provider Defendants DOES 21-30 exceeded the authority vested in them as prison
16  healthcare providers under the United States Constitution and as employees of STATE. Healthcare
17  Provider Defendants DOES 21-30 and the other defendants have been deliberately indifferent to the
18  danger of the spread of COVID-19 within CRC, at least in part, by exceedingly inadequate efforts and
19  procedures to determine whether inmates suffered from contagious illnesses, who would require
20  segregation from other inmates to prevent the spread of illness among inmates within the jails. As a result
21  of this deliberate indifference, as in this case, Plaintiffs were exposed to COVID-19. Healthcare Provider
22  Defendants DOES 21-30 are being sued in their individual and official capacities.

23       12.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES
24  31-50, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this
25  complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe
26  and thereon allege that each of these fictitiously named Defendants is responsible in some manner for the
27  occurrences herein alleged, and that Plaintiffs injuries as herein alleged were proximately caused by the
28  aforementioned Defendants. Defendants DOES 31-50 are sued individually and in their capacity as

1   employees for STATE. By engaging in the conduct described here, Defendants DOES 31-50 acted under

2   the color of law and in the course and scope of their employment for Defendant STATE. By engaging in

3   the conduct described here, Defendants DOES 31-50 exceeded the authority vested in them under the

4   United States Constitution and as employees of STATE. DOES 31-50 and the other defendants have been

5   deliberately indifferent to the danger of the spread of COVID-19 within CRC. As a result of this deliberate

6   indifference, as in this case, Plaintiffs were exposed to COVID-19. Defendants DOES 31-50 are being

7   sued in their individual and official capacities.

8       13.     Plaintiffs are informed and believe and thereon allege that at all times herein mentioned

9   each of the Defendants was the agent and employee of each of the remaining Defendants and, in doing

10   the things hereinafter alleged, were acting within the course and scope of such agency and employment.

11      14.     Venue is proper pursuant to Code of Civil Procedure sections 394 and 395 because CRC

12   is located within this district, the action complained of herein occurred in this district, and all other

13   Defendants are located in the district.

14                              **III.   GENERAL ALLEGATIONS**

15      15.     The  California Rehabilitation Center is a state prison located in Norco, California, with a

16   capacity of housing approximately 2,491 inmates.

17      16.     In December 2019, a new strain of Coronavirus known as COVID-19 was first observed

18   in humans in China. The virus quickly spread through China and Asia and has caused a global pandemic.

19   Infection with COVID-19 is generally associated with symptoms such as fever, a dry cough, shortness of

20   breath, infection, pneumonia, and it can be fatal.

21      17.     Clinicians and public health experts continue to learn more about the virus and its effects

22   on the human body. The virus is primarily spread by contact with virus-laden respiratory droplets expelled

23   while speaking, coughing, or sneezing. In addition to the cold- and flu-like symptoms, COVID-19

24   patients typically experience, the virus has been linked to loss of taste and smell, blood clots, severe

25   strokes, heart inflammation, cardiac arrest, acute kidney disease, intestinal damage, liver damage,

26   neurological problems, and even death.

27      18.     Research also shows that controlling the spread of COVID-19 is made even more difficult

28   because of the prominence of asymptomatic transmission-infection transmission by people who are

1   contagious but exhibit limited or no symptoms, rendering any screening tools dependent on identifying
2   symptomatic behavior ineffective.

3   19.     COVID-19 has been especially dangerous in areas of close confinement, such as cruise
4   ships and assisted living facilities. It follows that prisons are particularly vulnerable to an outbreak. In
5   fact, prisons are at an even greater risk because of their close quarters and communal living spaces.

6   20.     On January 30, 2020, the World Health Organization declared COVID-19 a global health
7   emergency.

8   21.     On March 4, 2020, Governor Gavin Newsom declared a State of Emergency to make
9   additional resources available, formalize emergency actions already underway across multiple state
10  agencies and departments, and help STATE prepare for broader spread of COVID-19.

11  22.     Because of this looming disaster, on or about March 23, 2020, the Centers for Disease
12  Control and Prevention ("CDC") published guidance for correctional and detention facilities to prepare
13  and protect inmates and personnel from the COVID-19 pandemic. The CDC's guidance included the
14  following advice for preventing the spread of COVID-19 in a correctional or detention facility:

15  • Perform pre-intake screening and temperature checks for all new entrants. Screening should
16    take place in the sallyport, before beginning the intake process, in order to identify and
17    immediately place individuals with symptoms under medical isolation;

18  • Facilities should ensure the availability of sufficient stocks of hygiene supplies, cleaning
19    supplies, personal protective equipment ("PPE"), and medical supplies that are consistent
20    with the facility's healthcare capabilities (this includes liquid soap, alcohol-based hand
21    sanitizer with at least 60% alcohol, PPE including facemasks and gloves, and supplies for
22    testing, such as sterile viral transport media and sterile swabs);

23  • Facilities should make contingency plans in the event of PPE shortages;

24  • Facilities should provide a no-cost supply of soap to incarcerated/detained persons, sufficient
25    to allow frequent hand washing;

26  • Facilities should provide alcohol-based hand sanitizer containing at least 60% alcohol;

27  • Facilities should adhere to CDC recommendations for cleaning and disinfecting during the
28    COVID-19 response, including cleaning and disinfecting frequently touched surfaces

-7-
**COMPLAINT FOR DAMAGES**

several times per day;

- Facilities should encourage all persons in the facility to protect themselves by practicing good cough etiquette and good hand hygiene and avoiding touching of the eyes, nose, or mouth;

- Facilities should encourage these behaviors by posting signs throughout the facility and communicating the information verbally on a regular basis;

- Facilities should implement physical distancing strategies to increase the physical space between incarcerated/detained persons, ideally six feet between all individuals, regardless of the presence of symptoms (this should include enforcing increased space between individuals in holding cells and waiting areas, staggering time in recreation spaces, staggering meals and rearranging seating in the dining hall to increase space between individuals, liming the size of group activities, and rearranging housing spaces to increase space between individuals); and

- Facilities should provide inmates with information and consistent updates about COVID-19 and its symptoms.

23.     Despite the danger at CRC of the spread of COVID-19, Defendants failed to implement policies and procedures to prevent the spread of COVID-19 in CRC, including, but not limited to, failing to limit the numbers of inmates housed together, so as to create sufficient physical distancing space, failing to release low-level offender inmates who were eligible for early release to create space in CRC sufficient to allow for physical distancing (situating one's self at least six feet away from other individuals) failing to provide inmates with facial masks, failing to adequately keep the interiors of CRC clean and disinfected, failing to provide sufficient disinfecting cleaners, and cleaning apparatuses, failing to provide alcohol based hand sanitizer, failing to provide antibacterial soaps and cleansers, failing to require CRC employees to wear face masks, failing to require CRC employees to engage in frequent hand-washing and/or hand sanitizing. Defendants knew of the risk of serious harm to Plaintiffs and were deliberately indifferent to that risk, disregarding it by failing to take reasonable measures to address it.

24.     According to data provided by Defendant CDCR, there were no reported positive cases of

**COMPLAINT FOR DAMAGES**

1  COVID-19 until June 8, 2020.[1]

2      25.      As of April 16, 2020, reports surfaced that CRC had 72 confirmed cases of COVID-19, of
3  which 51 were inmates and 21 were staff. According to statistics provided by Defendant CDCR, this was
4  the largest outbreak of COVID-19 among all state prisons in California.[2]

5      26.      Despite the danger in CRC of the spread of COVID-19, Defendants CDCR; STATE;
6  CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y.
7  TAMPKINS; KERRY OGLESBY; and DOES 1-100 did not conduct an analysis of CRC records to
8  identify particularly vulnerable inmates, in order to release them, or segregate them to prevent them being
9  exposed to the virus.

10      27.      Despite the danger at CRC of the spread of COVID-19, Defendants CDCR; STATE;
11  CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y.
12  TAMPKINS; KERRY OGLESBY; and DOES 1-100 did not conduct an analysis of CRC population to
13  determine whether there are any low-level offender inmates who might be eligible for early release, so
14  that such inmates may be released from CRC to create additional space to allow for physical distancing.

15      28.      Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and
16  official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100, failed
17  to implement policies and procedures to adequately screen for COVID-19. Defendants knew of the risk
18  of serious harm to Plaintiffs and were deliberately indifferent to that risk, disregarding it by failing to
19  take reasonable measures to address that risk.

20      29.      Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and
21  official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 failed
22  to implement policies and procedures to adequately screen for COVID-19 newly admitted individuals
23  who were being brought into CRC for housing. Defendants knew of the risk of serious harm to Plaintiffs
24  and were deliberately indifferent to that risk, disregarding it by failing to take reasonable measures to
25  address it.

26

27  [1] https://www.cdcr.ca.gov/covid19/population-status-tracking/ (last accessed January 30, 2021).

28  [2] *Id.*

**COMPLAINT FOR DAMAGES**

30.     Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 failed to implement policies and procedures to adequately screen for COVID-19 inmates who were housed in close proximity to other inmates. Defendants knew of the risk of serious harm to Plaintiffs and were deliberately indifferent to that risk, disregarding it by failing to take reasonable measures to address that risk.

31.     Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 failed to implement policies and procedures to adequately screen for COVID-19 among existing inmates who were going to be re-housed in either different cells, tanks, units, or dorms, and/or existing inmates who were going to be re-housed at CRC or another facility of STATE. Defendants knew of the risk of serious harm to Plaintiffs, and were deliberately indifferent to that risk, disregarding it by failing to take reasonable measures to address it.

32.     Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 failed to implement policies and procedures to adequately screen for COVID-19 among CRC employees and/or agents, who would be entering the facility on a daily basis, and who would come into contact with other CRC employees and/or agents, as well as CRC inmates themselves. Defendants knew of the risk of serious harm to Plaintiffs, and were deliberately indifferent to that risk, disregarding it by failing to take reasonable measures to address it.

33.     Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 failed to adequately screen for COVID-19 during the classification process of newly-arrested individuals who were being brought into CRC for housing.

34.     Healthcare Provider Defendants DOES 21-30 failed to adequately determine whether inmates had COVID-19, and would require segregation from other inmates to prevent the spread of virus among inmates within the jails. Healthcare Provider Defendants knew of the risk of serious harm to Plaintiffs, and were deliberately indifferent to that risk, disregarding it by failing to take reasonable

1  measures to address it.

2      35.     Defendants housed inmates who were ostensibly ill with inmates who were not ill, showed
3  no signs of illness, and had not been tested for COVID-19.

4      36.     Plaintiffs complained to Defendants DOES 31-50 when an ostensibly sick inmate was
5  brought in to be housed in their housing units. Plaintiffs asked Defendants DOES 31-50 why a sick inmate
6  was being housed with them. Defendants DOES 31-50 responded with deliberate indifference, refusing
7  to desegregate inmates with and without COVID-19 symptoms.

8      37.     Plaintiffs, and other inmates who felt sick, requested to see medical staff because they felt
9  ill, and had symptoms consistent with COVID-19. Healthcare Provider Defendants DOES 21-30 and
10  Defendants DOES 31-50 would either ignore Plaintiffs, or they would tell Plaintiffs they needed to submit
11  a medical slip request. In many cases, Defendants DOES 31-50 would not collect the slips in a timely
12  manner. When Plaintiffs and other inmates submitted requests to see medical staff, there was a delay for
13  several days, and in some cases weeks, between when the request was made, and when Healthcare
14  Provider Defendants DOES 21-30 actually responded. Healthcare Provider Defendants DOES 21-30 and
15  Defendants DOES 31-50 knew, and had reason to know, that Plaintiffs were in need of immediate medical
16  care but failed to take reasonable actions to summon such medical care.

17      38.     Plaintiffs and other inmates requested to be tested for COVID-19, but Healthcare Provider
18  Defendants DOES 21-30 refused them tests. Healthcare Provider Defendants DOES 21-30 knew, and had
19  reason to know, that Plaintiffs were in need of immediate medical care but failed to take reasonable
20  actions to summon such medical care.

21      39.     Plaintiffs and other inmates at CRC have been exposed to COVID-19 and suffered harm
22  due to the acts and omissions of Defendants committed with deliberate indifference to the well-being of
23  Plaintiffs.

24      **a.  Plaintiff ARDELL MCDUFFIE'S ("MCDUFFIE") exposure to COVID-19 and**
25  **ongoing harm:** MCDUFFIE tested positive for COVID-19 on July 1, 2020. Since mid-June 2020,
26  MCDUFFIE has been experiencing COVID-19-related symptoms, including loss of taste, difficulty
27  breathing, and wheezing. After MCDUFFIE reported these symptoms to the correctional officer, he was
28  not given any medication and was moved to a different facility, one with no circulation and or sanitation.

-11-
**COMPLAINT FOR DAMAGES**

1  Defendants have failed to provide MCDUFFIE with adequate personal protective equipment and have
2  prevented MCDUFFIE from maintaining physical distancing between inmates.

3  **b.  Plaintiff DANIEL CESARIO RAMIREZ'S ("RAMIREZ") exposure to COVID-19**
4  **and ongoing harm:**  RAMIREZ tested positive for COVID-19 on July 10, 2020 and has been
5  experiencing symptoms such as body aches, congestion, headache, and sinus pain. After testing positive
6  for COVID-19 and requesting medical attention for his severe allergies, RAMIREZ was not provided
7  any medical attention until two weeks later. CRC did not implement appropriate physical distancing
8  measures, and non-prisoner staff and officers did not wear masks.  Defendants' failure to provide
9  appropriate safeguards and deliberate indifference for the lives and well-being of RAMIREZ and other
10 inmates resulting in dozens of confirmed cases in RAMIREZ'S dorm alone.

11 **c.  Plaintiff DEMETRIUS ROGERS' ("ROGERS") exposure to COVID-19 and**
12 **ongoing harm:**  ROGERS tested positive for COVID-19 on July 6, 2020 and has been experiencing
13 symptoms such as headaches, shortness of breath, and loss of taste and smell. ROGERS has still not
14 regained his sense of taste and smell. ROGERS also has the underlying condition asthma, of which CRC
15 was aware. After testing positive for COVID-19 and informing medical staff that he was having difficulty
16 breathing, particularly because of his known underlying asthma condition, ROGERS was not provided
17 medical attention and was not seen by a doctor. CRC, TAMPKINS, and OGLESBY failed to provide
18 appropriate personal protective equipment to ROGERS and forced him to continue living in close
19 quarters, making it impossible to maintain social distancing.

20    40.    As a direct and proximate result of Defendants' acts and omissions, as described above,
21 Plaintiffs were exposed to COVID-19 while incarcerated in CRC.

22    41.    As a direct and proximate result of the acts and/or omissions of Defendants in exposing
23 Plaintiffs to actual risk of immediate physical injury, Plaintiffs became ill, suffering from fever, chills,
24 cough, shortness of breath, difficulty breathing, fatigue, muscle and body aches, headache, loss of taste,
25 loss of smell, sore throat, congestion, runny nose, nausea, vomiting, diarrhea, and persistent pain and
26 pressure in the chest. In addition, Plaintiffs have suffered injuries and emotional distress of the nature and
27 type that reasonable persons would suffer under the circumstances alleged in this Complaint, including,
28 but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation

1   and shame.

2       42.    Plaintiffs were traumatized by the fear of developing COVID-19 due to their confinement

3   in prison 24 hours per day, where adequate measures were not being taken to prevent the spread of the

4   virus.

5       43.    Furthermore, as public health experts and physicians learn more about the myriad ways

6   COVID-19 attacks and damages the body, Plaintiffs develop new and evolving medical fears and

7   uncertainties that require and will continue to require medical diagnostic exams.

8       44.    On September 18, 2020, Plaintiffs exhausted their administrative remedies.

9       45.    Between October 7, 2020, and January 8, 2021, Plaintiffs filed timely claims and appeals

10  for damages with Defendant STATE pursuant to the applicable sections of the California Government

11  Code § 900, *et seq.*

12      46.    Defendant STATE rejected Plaintiffs' claims between December 14, 2020 and

13  December16, 2020.

14  ### IV.    FIRST CAUSE OF ACTION

15  ### 42 U.S.C. § 1983

16      47.    Plaintiffs re-allege and incorporate by reference all previous allegations as though set forth

17  in full herein.

18  **Conditions of Confinement—Eighth Amendment**

19      48.    42 U.S.C. § 1983 provides that any person or persons who, under color of state law,

20  deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United

21  States shall be liable to the injured party.

22      49.    Under the Eighth Amendment, a convicted prisoner has the right to be free from "cruel

23  and unusual punishments."

24      50.    At all times relevant, Plaintiffs faced a substantial risk of serious harm, and a serious

25  medical need.

26      51.    Defendants were deliberately indifferent to those risks and medical needs. Defendants

27  knew of the risks and medical needs and disregarded those risks and needs by failing to take reasonable

28  measures to address them. The Supreme Court has recognized that officials may not be "deliberately

-13-
**COMPLAINT FOR DAMAGES**

1  indifferent to the exposure of inmates to a serious, communicable disease." (*Helling v. McKinney*

2  symptoms." (*Id.*; see also *Hutto v. Finney* (1978) 437 U.S. 678, 682 (finding Eighth Amendment violation

3  and noting incarcerated people were placed in conditions where infectious diseases could spread easily).)

4  Failure to prevent the spread of a contagious illness constitutes deliberate indifference to a serious medical

5  need. (See *Hutto*, supra, 437 U.S. at 682; *Gates v. Collier* (5th Cir. 1974) 501 F.2d 1291, 1300, 1303

6  (holding plaintiffs entitled to relief under Eighth Amendment due to, among other conditions, allowing

7  "inmates with serious contagious diseases ... to mingle with the general prison population"). It is well

8  established that the Government may not "ignore a condition of confinement that is sure or very likely to

9  cause serious illness." (*Helling*, *supra*, 509 U.S. at 33. See *Brown v. Plata* (2011) 563 U.S. 493, 508-09,

10  519-20 (affirming population reduction order and citing findings that "[o]vercrowding had increased the

11  incidence of infectious disease" in California prisons, and that crowded living quarters "where large

12  numbers of prisoners may share just a few toilets and showers [were] 'breeding grounds for disease'").)

13  52.    As a direct and proximate result of Defendants' acts and omissions, as described above,

14  Plaintiffs were exposed to COVID-19 while incarcerated in CRC.

15  53.    As a direct and proximate result of the acts and/or omissions of Defendants in exposing

16  Plaintiffs to actual risk of immediate physical injury, Plaintiffs became ill, suffering from fever, chills,

17  cough, shortness of breath, difficulty breathing, fatigue, muscle and body aches, headache, loss of taste,

18  loss of smell, sore throat, congestion, runny nose, nausea, vomiting, diarrhea, and persistent pain and

19  pressure in the chest. In addition, Plaintiffs have suffered injuries and emotional distress of the nature and

20  type that reasonable persons would suffer under the circumstances alleged in this Complaint, including,

21  but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation

22  and shame.

23  54.    Plaintiffs were traumatized by the fear of developing COVID-19 due to their confinement

24  in prison 24 hours per day, where inadequate measures were being taken to prevent the

25  55.    Furthermore, as public health experts and physicians learn more about the myriad ways

26  COVID-19 attacks and damages the body, Plaintiffs develop new and evolving medical fears and

27  uncertainties that require and will continue to require medical diagnostic exams.

28  56.    The conduct of Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his

**COMPLAINT FOR DAMAGES**

1    individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; OGLESBY KERRY

2    OGLESBY; and DOES 1-100 was oppressive, and Defendants acted with reckless and callous

3    indifference to the federally protected rights of others. As such, Defendants' actions justify an award of

4    punitive damages in an amount to be determined at the time of trial.

5                      **Conditions of Confinement—Fourteenth Amendment**

6        57.        42 U.S.C. § 1983 provides that any person or persons who, under color of state law,

7    deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United

8    States shall be liable to the injured party.

9        58.        Defendants failed to provide safe conditions of confinement in CRC. The Supreme Court

10   has recognized that officials may not be "deliberately indifferent to the exposure of inmates to a serious,

11   communicable disease." (*Helling v. McKinney* (1993) 509 U.S. 25, 33.) This is true even when "the

12   complaining inmate shows no serious current symptoms." (Id; see also *Hutto v. Finney* (1978) 437 U.S.

13   678, 682 (finding Eighth Amendment violation and noting incarcerated people were placed in conditions

14   where infectious diseases could spread easily).) Failure to prevent the spread of a contagious illness

15   constitutes deliberate indifference to a serious medical need. (See *Hutto*, supra, 437 U.S. at 682; *Gates v.

16   Collier* (5th Cir. 1974) 501 F.2d 1291, 1300, 1303 (holding plaintiffs entitled to relief under Eighth

17   Amendment due to, among other conditions, allowing "inmates with serious contagious diseases ... to

18   mingle with the general prison population"). It is well established that the Government may not "ignore

19   a condition of confinement that is sure or very likely to cause serious illness." (*Helling, supra,* 509 U.S.

20   at 33, See *Brown v. Plata* (2011) 563 U.S. 493, 508, 09, 519-20 ( affirming population reduction order

21   and citing findings that "[o]vercrowding had increased the incidence of infectious disease" in California

22   prisons, and that crowded living quarters "where large numbers of prisoners may share just a few toilets

23   and showers [were] 'breeding grounds for disease'").)

24       59.        Defendants made an intentional decision regarding the conditions under which Plaintiffs

25   were confined.

26       60.        The conditions of confinement put Plaintiffs at substantial risk of suffering serious harm.

27       61.        Defendants did not take reasonable available measures to abate or reduce the risk of

28   serious harm, even though a reasonable officer under the circumstances would have understood the high

1   degree of risk involved-making the consequences of Defendants' conduct obvious.

2   62.   As a direct and proximate result of Defendants' acts and omissions, as described above,

3   Plaintiffs were exposed to COVID-19 while incarcerated in CRC.

4   63.   As a direct and proximate result of the acts and/or omissions of Defendants in exposing

5   Plaintiffs to actual risk of immediate physical injury, Plaintiffs became ill, suffering from fever, chills,

6   cough, shortness of breath, difficulty breathing, fatigue, muscle and body aches, headache, loss of taste,

7   loss of smell, sore throat, congestion, runny nose, nausea, vomiting, diarrhea, and persistent pain and

8   pressure in the chest. In addition, Plaintiffs have suffered injuries and emotional distress of the nature and

9   type that reasonable persons would suffer under the circumstances alleged in this Complaint, including,

10  but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation

11  and shame.

12  64.   Plaintiffs were traumatized by the fear of developing COVID-19 due to their confinement

13  in prison 24 hours per day, where inadequate measures were being taken to prevent the

14  65.   Furthermore, as public health experts and physicians learn more about the myriad ways

15  COVID-19 attacks and damages the body, Plaintiffs develop new and evolving medical fears and

16  uncertainties that require and will continue to require medical diagnostic exams.

17  66.   The conduct of Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his

18  individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and

19  DOES 1-100 was oppressive, and Defendants acted with reckless and callous indifference to the federally

20  protected rights of others. As such, Defendants' actions justify an award of punitive damages in an

21  amount to be determined at the time of trial.

22  67.   As a direct and proximate result of Defendants' acts and omissions, as described above,

23  Plaintiffs were exposed to COVID-19 while incarcerated in CRC.

24  68.   As a direct and proximate result of the acts and/or omissions of Defendants in exposing

25  Plaintiffs to actual risk of immediate physical injury, Plaintiffs became ill, suffering from fever, chills,

26  cough, shortness of breath, difficulty breathing, fatigue, muscle and body aches, headache, loss of taste,

27  loss of smell, sore throat, congestion, runny nose, nausea, vomiting, diarrhea, and persistent pain and

28  pressure in the chest. In addition, Plaintiffs have suffered injuries and emotional distress of the nature and

type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

69.     Plaintiffs were traumatized by the fear of developing COVID-19 due to their confinement in prison 24 hours per day, where inadequate measures were being taken to prevent the spread of the virus.

70.     Furthermore, as public health experts and physicians learn more about the myriad ways COVID-19 attacks and damages the body, Plaintiffs develop new and evolving medical fears and uncertainties that require and will continue to require medical diagnostic exams.

71.     The conduct of Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 was oppressive, and Defendants acted with reckless and callous indifference to the federally protected rights of others. As such, Defendants' actions justify an award of punitive damages in an amount to be determined at the time of trial.

## V.     SECOND CAUSE OF ACTION

### *MONELL* LIABILITY PURSUANT TO 42 U.S.C. § 1983

72.     Plaintiffs re-allege and incorporate by reference all previous allegations as though set forth in full herein.

73.     Defendants, by and through their supervising and managerial employees, agents, and representatives, deprived Plaintiffs of the rights and liberties secured to them by the Fourth Amendment of the United States Constitution by acting with gross negligence and reckless, deliberate indifference to the rights and liberties of Plaintiffs and persons in their class, situation, and comparable position.  In particular, Defendants knowingly maintained, enforced, and applied an official, recognized set of CDCR customs, policies, and practices that:

        • Failed to provide a no-cost supply of soap to incarcerated/detained persons, sufficient to allow
          frequent hand washing;

        • Failed to provide alcohol-based hand sanitizer containing at least 60% alcohol;

        • Failed to adhere to CDC recommendations for cleaning and disinfection during the COVID-19

-17-
**COMPLAINT FOR DAMAGES**

response, including cleaning and disinfecting frequently touched surfaces several times per day;

• Failed to encourage all persons in the facility to protect themselves by practicing good cough etiquette and good hand hygiene and avoiding touching of the eyes, nose, or mouth;

• Failed to encourage these behaviors by posting signs throughout the facility and regularly communicating that information verbally;

• Failed to implement physical distancing strategies to increase the physical space between incarcerated/detained persons (ideally 6 feet between all individuals, regardless of the presence

• Failed to provide inmates with information and consistent updates about COVID-19 and its symptoms;

• Failed to test inmates for COVID-19, and segregate inmates who test positive from other inmates;

• Failed to test new incoming inmates for COVID-19, and segregate those who test positive from other inmates;

• Housing ostensibly sick inmates with inmates who were not sick and who had not tested positive for COVID-19;

• Placing inmates who had had contact with inmates who later tested positive for COVID- 19 with inmates who were ostensibly sick, or who tested positive for COVID-19; and

• Failing to promptly and adequately test CRC employees for COVID-19 before allowing the employees to enter CRC and spread the virus.

74.     By reason of the aforementioned policies and practices of Defendants, Plaintiffs have contracted COVID-19, and have suffered severe pain and suffering, mental anguish, humiliation, and emotional distress.

75.     Defendants, together, with various other officials, whether named, or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs, alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated, and through actions and inactions thereby ratified such policies. Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiffs, and other individuals similarly situated.

76.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants acted with intentional, reckless, and callous disregard for the well-being of Plaintiffs, and their constitutional and human rights. Defendants and each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

77.     Furthermore, these policies, practices and customs implemented and maintained and still tolerated by Defendants were affirmatively linked to and were a significantly influential force behind Plaintiffs' injuries.

78.     Accordingly, Defendants each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

79.     As a direct and proximate result of Defendants' acts and omissions, as described above, Plaintiffs were exposed to COVID-19 while incarcerated in CRC.

80.     As a direct and proximate result of the acts and/or omissions of Defendants in exposing Plaintiffs to actual risk of immediate physical injury, Plaintiffs became ill, suffering from fever, chills, cough, shortness of breath, difficulty breathing, fatigue, muscle and body aches, headache, loss of taste, loss of smell, sore throat, congestion, runny nose, nausea, vomiting, diarrhea, and persistent pain and pressure in the chest. In addition, Plaintiffs have suffered injuries and emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

81.     Plaintiffs were traumatized by the fear of developing COVID-19 due to their confinement in prison 24 hours per day, where inadequate measures were being taken to prevent the spread of the virus.

82.     Furthermore, as public health experts and physicians learn more about the myriad ways COVID-19 attacks and damages the body, Plaintiffs develop new and evolving medical fears and uncertainties that require and will continue to require medical diagnostic exams.

///

///

# VI.   THIRD CAUSE OF ACTION

## DANGEROUS CONDITION ON PUBLIC PROPERTY

### [GOV. CODE § 835]

83.      Plaintiffs re-allege and incorporate by reference all previous allegations as though set forth in full herein.

84.      Defendants owned, ran, operated, or controlled CRC.

85.      CIM was in a dangerous condition at all times mentioned in this Complaint. CRC has individual small, cells with two to four inmate bunk style beds per cell and/or dorm rooms, which housed over forty inmates in a single room, with bunk style beds approximately three feet apart in distance between the beds. The above-described conditions made it impossible for inmates to practice physical distancing by maintaining six feet of distance from other inmates. Prison cells with individual, small, cells with two to four inmate bunk style beds per cell were especially dangerous because Plaintiffs were locked in extremely close quarters with other inmates, which made it impossible to avoid other inmates' virus-laden droplets expelled while speaking, coughing, or sneezing. Prison cells with dorm rooms, which housed over 40 inmates in a single room, with bunk style beds approximately three feet apart in distance between the beds, were also dangerous because Plaintiffs were locked in a room with over 40 inmates, which made it impossible to avoid other inmates' virus-laden droplets expelled while speaking, coughing, or sneezing.

86.      The dangerous condition created a reasonably foreseeable risk of the kind of injury that

87.      The negligent or wrongful conduct of Defendants acting within the scope of their employment created the dangerous condition.

88.      The Defendants had notice of the dangerous condition for a long enough time to have protected against it.

89.      As a direct and proximate result of Defendants' acts and omissions, as described above, Plaintiffs were exposed to COVID-19 while incarcerated in CRC.

90.      As a direct and proximate result of the acts and/or omissions of Defendants in exposing Plaintiffs to actual risk of immediate physical injury, Plaintiffs became ill, suffering from fever, chills, cough, shortness of breath, difficulty breathing, fatigue, muscle and body aches, headache, loss of taste,

-20-

loss of smell, sore throat, congestion, runny nose, nausea, vomiting, diarrhea, and persistent pain and pressure in the chest. In addition, Plaintiffs have suffered injuries and emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

91. Plaintiffs were traumatized by the fear of developing COVID-19 due to their confinement in prison 24 hours per day, where inadequate measures were being taken to prevent the spread of the virus.

92. Furthermore, as public health experts and physicians learn more about the myriad ways COVID-19 attacks and damages the body, Plaintiffs develop new and evolving medical fears and uncertainties that require and will continue to require medical diagnostic exams.

93. The dangerous condition was a substantial factor in causing Plaintiffs' harm.

94. Defendant STATE is liable for the acts of Defendants pursuant to Government Code § 815.2(a), which provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

95. Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 are liable pursuant to Government Code section 844.6(d), which provides that nothing in Section 844.6 exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission.

96. The conduct of Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 was oppressive, and in reckless disregard of Plaintiffs' rights. As such, Defendants' actions justify an award of punitive damages in an amount to be determined at the time of trial.

///

///

## VII.   FOURTH CAUSE OF ACTION

### NEGLIGENCE

97.     Plaintiffs re-allege and incorporate by reference all previous allegations as though set forth in full herein.

98.     The Defendants owned Plaintiffs a duty of care to protect them from the risk of contracting COVID-19 while incarcerated in CRC.

99.     The Defendants breached their duty owed to Plaintiffs.

100.    As a direct and proximate result of Defendants' acts and omissions, as described above, Plaintiffs were exposed to COVID-19 while incarcerated in CRC.

101.    As a direct and proximate result of the acts and/or omissions of Defendants in exposing Plaintiffs to actual risk of immediate physical injury, Plaintiffs became ill, suffering from fever, chills, cough, shortness of breath, difficulty breathing, fatigue, muscle and body aches, headache, loss of taste, loss of smell, sore throat, congestion, runny nose, nausea, vomiting, diarrhea, and persistent pain and pressure in the chest. In addition, Plaintiffs have suffered injuries and emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

102.    Plaintiffs were traumatized by the fear of developing COVID-19 due to their confinement in prison 24 hours per day, where inadequate measures were being taken to prevent the spread of the virus.

103.    Furthermore, as public health experts and physicians learn more about the myriad ways COVID-19 attacks and damages the body, Plaintiffs develop new and evolving medical fears and uncertainties that require and will continue to require medical diagnostic exams.

104.    STATE and CDCR's employees' negligence was a substantial factor in causing Plaintiffs' harm.

105.    Defendant STATE is liable for the acts of Defendants pursuant to Government Code § 815.2(a), which provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would,

1 apart from this section, have given rise to a cause of action against that employee or his personal
2 representative.

3     106.     Defendants CDCR SECRETARY RALPH DIAZ, in his individual and official capacities;
4 WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 are liable pursuant to
5 Government Code section 844.6(d), which provides that nothing in Section 844.6 exonerates a public
6 employee from liability for injury proximately caused by his negligent or wrongful act or omission.

7     107.     Defendants are liable pursuant to Government Code section 845.6, which provides that a
8 public entity and a public employee are liable if the employee knows or has reason to know that a prisoner
9 is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

10     108.     The conduct of Defendants CDCR SECRETARY RALPH DIAZ, in his individual and
11 official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 was
12 oppressive, and in reckless disregard of Plaintiffs' rights. As such, Defendants' actions justify an award
13 of punitive damages in an amount to be determined at the time of trial.

14 <div align="center">**VIII.   FIFTH CAUSE OF ACTION**</div>

15 <div align="center">**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**</div>

16     109.     Plaintiffs re-allege and incorporate by reference all previous allegations as though set forth
17 in full herein.

18     110.     Defendants knew or should have known of the actual risk of a viral outbreak of COVID-
19 19 in CRC. Defendants knew or should have known that it was especially dangerous to expose Plaintiffs
20 to COVID-19.

21     111.     Nevertheless, Defendants acts and/or omissions, as described above, created a dangerous
22 and threatening environment in which Plaintiffs were forced to live for month after month, at all times
23 directly at risk of becoming infected with, made ill by, and/or spreading COVID-19.

24     112.     As the direct and proximate result of Defendants' actions and omissions, Plaintiffs were
25 in the "zone of danger," where they were at immediate risk of actual physical harm, including the potential
26 of contracting COVID-19, suffering from the illness-including experiencing shortness of breath,
27 coughing, body aches, fever, and/or any number of yet-to-be identified future ailments, such as liver
28 damage, kidney failure, or blood clotting- and potentially death as a result of the virus.

<div align="center">-23-

**COMPLAINT FOR DAMAGES**</div>

113.     As a direct and proximate result of the acts and/or omissions of Defendants in exposing Plaintiffs to actual risk of immediate physical injury, Plaintiffs became ill, suffering from fever, chills, cough, shortness of breath, difficulty breathing, fatigue, muscle and body aches, headache, loss of taste, loss of smell, sore throat, congestion, runny nose, nausea, vomiting, diarrhea, and persistent pain and pressure in the chest. In addition, Plaintiffs have suffered injuries and emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

114.     Plaintiffs were traumatized by the fear of developing COVID-19 due to their confinement in prison 24 hours per day, where inadequate measures were being taken to prevent the spread of the virus.

115.     Furthermore, as public health experts and physicians learn more about the myriad ways COVID-19 attacks and damages the body, Plaintiffs develop new and evolving medical fears and uncertainties that require and will continue to require medical diagnostic exams.

116.     Defendant STATE is liable for the acts of Defendants pursuant to Government Code § 815.2(a), which provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

117.     Defendants CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 are liable pursuant to Government Code section 844.6(d), which provides that nothing in Section 844.6 exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission.

118.     Defendants are liable pursuant to Government Code section 845.6, which provides that a public entity and a public employee are liable if the employee knows or has reason to know that a prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

119.     The conduct of Defendants CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 was

oppressive, and in reckless disregard of Plaintiffs' rights. As such, Defendants' actions justify an award of punitive damages in an amount to be determined at the time of trial.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ARDELL MCDUFFIE, DANIEL CESARIO RAMIREZ, and DEMETRIUS ROGERS pray for judgment against Defendants as follows:

1.    For damages according to proof;

2.    For interest as allowed by law;

3.    For reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

4.    For costs of suit incurred by Plaintiffs; and

5.    For punitive damages in an amount appropriate to punish Defendants CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 and deter others from engaging in similar misconduct.

## X.   DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury in this case.

Dated: March 29, 2021                    **SHEGERIAN & ASSOCIATES, INC.**

By:   _Carney R. Shegerian_
Carney R. Shegerian

Attorneys for Plaintiffs ARDELL
MCDUFFIE, DANIEL CESARIO
RAMIREZ, and DEMETRIUS ROGERS

-25-
**COMPLAINT FOR DAMAGES**

# EXHIBIT B

# OFFICE OF THE ATTORNEY GENERAL
## DEPARTMENT OF JUSTICE
### Civil Service of Process Cover Sheet
SAC   SF   OAK   LA   SD   FR



Date Stamp & Time

**Service of Process Disclaimer:**

To All Persons Attempting Service of Process Upon The Office Of The Attorney General:

Please be advised that staff assigned to receive documents delivered to the Attorney General's Office are not authorized to accept such documents as properly served.  Further, **staff are not authorized to receive documents on behalf of any individual.**  In receiving documents delivered by process servers and/or other members of the public, office personnel do not thereby waive any right of the State of California, the Attorney General's Office, any other entity of the State of California, or any individual to object to the validity of the service.

Please complete this form when delivering documents to the Attorney General's Office:

| Case Name: | ARDELL MCDUFFIE VS CA DEPT OF CORRECTIONS AND REHAB | |
|---|---|---|
| County : RIVERSIDE | | Court No.:  CVRI2101568 |
| Document(s) served: | ☒ Summons and Complaint/Cross Complaint/Amended Complaint<br>☐ Notice to Attorney General's Office pursuant to Section _____<br>☐ Petition For Relief From Late Claim Filing (Gov. Code, § 946.6)<br>☐ Pitchess Motion<br>☐ Small Claims<br>☐ Deposition Subpoena for Production of Business Records | ☐ Notice of Consumer or Employee and Objection and check for $15.00<br>☐ Writ of Mandate and Complaint for Declaratory Relief<br>☐ Other (please list):<br>_____<br>_____<br>_____ |
| Document(s) For (Specify State Agency): | STATE OF CALIFORNIA | |
| Process Server's Name: | Jonathan Shisler, Sacramento County 2008-10      Krystalyn Johnson | |
| Name of Company: (business name, address, and number) | A2Z Attorney Service<br>980 9th St, 16th Flr<br>Sacramento, CA 95816<br>916-436-5484 | |
| Receptionist Signature: | W. G. | |

| FOR SERVICE DEPUTY'S USE ONLY | | | |
|---|---|---|---|
| Forwarded to: | | Date Forwarded: | |
| Name of Service Deputy, section, and telephone number: | | | |
| NOTES: | | | |

The attached document(s) appear(s) to be the responsibility of your section; if they are **not**, please return them to the Service Deputy named above, noting the section to which they are to be directed.      **(Rev. 7/2014).**

COPY

SUM-100

**SUMMONS**
*(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

California Department of Corrections and Rehabilitation, See
Attachment 1.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Ardell McDuffie; Daniel Cesario Ramirez; and Demetrius Rogers

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 2 9 2021

L. VILLANUEVA

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Riverside Historic Courthouse<br>4050 Main St.<br>Riverside, CA 92501 | CASE NUMBER:<br>*(Número del Caso):*<br>CVRI   2 1 0 1 5 6 8 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Carney R. Shegerian, Esq. (SBN 150461)                    (310)860-0770
Shegerian & Associates, Inc.
145 S. Spring Street, Suite 400, Los Angeles, California 90012

| DATE:<br>*(Fecha)* March 29, 2021   MAR 2 9 2021 | Clerk, by<br>*(Secretario)*   L. VILLANUEVA | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (POS-010)).*

| | **NOTICE TO THE PERSON SERVED:** You are served |
|---|---|
| [SEAL] | 1. ☐ as an individual defendant.<br>2. ☐ as the person sued under the fictitious name of *(specify):*<br>3. ☒ on behalf of *(specify):* State of California<br> under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)<br>          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)<br>          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)<br>          ☒ other *(specify):* CCP 416.50 Public Entity<br>4. ☐ by personal delivery on *(date):* |

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |
|---|---|---|

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| McDuffie et al. v. California Department of Corrections and Rehabilitation, et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

[ ] Plaintiff   [X] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

State of California; CDCR Secretary Ralph Diaz, in his individual and official capacities; Warden Cynthia Y. Tampkins, in her individual and official capacities; Kerry Oglesby, in her individual and official capacities; and DOES 1-100 inclusive,

Page  1  of  1

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

COPY

1 │ Carney R. Shegerian, State Bar No. 150461
CShegerian@Shegerianlaw.com
2 │ Anthony Nguyen, State Bar No. 259154
ANguyen@Shegerianlaw.com
3 │ Cheryl A. Kenner, State Bar No. 305758
CKenner@Shegerianlaw.com
4 │ **SHEGERIAN & ASSOCIATES, INC.**
145 South Spring Street, Suite 400
5 │ Los Angeles, California 90012
Telephone Number:      (310) 860-0770
6 │ Facsimile Number:      (310) 860-0771

7 │ Attorneys for Plaintiffs ARDELL MCDUFFIE,
DANIEL CESARIO RAMIREZ, and
8 │ DEMETRIUS ROGERS

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 2 9 2021

L. VILLANUEVA

9

10

11 │                SUPERIOR COURT OF STATE OF CALIFORNIA

12 │                    FOR THE COUNTY OF RIVERSIDE

13

14 │ ARDELL MCDUFFIE; DANIEL CESARIO │ Case No.:   **CVRI**  2 1 0 1 5 6 8
RAMIREZ; and DEMETRIUS ROGERS;
15 │                                  │ **COMPLAINT FOR DAMAGES:**
                  Plaintiffs,
16 │                                  │   (1)  42 U.S.C. § 1983;
            vs.
17 │                                  │   (2)  42 U.S.C. § 1983 [*MONELL LIABILITY*];
CALIFORNIA DEPARTMENT OF
18 │ CORRECTIONS AND REHABILITATION;  │   (3)  **DANGEROUS CONDITION ON PUBLIC**
STATE OF CALIFORNIA; CDCR         │        **PROPERTY [GOV. CODE § 835];**
19 │ SECRETARY RALPH DIAZ, in his
individual and official capacities; WARDEN │   (4)  **NEGLIGENCE; and**
20 │ CYNTHIA Y. TAMPKINS, in her individual
and official capacities; KERRY OGLESBY, in │   (5)  **NEGLIGENT INFLICTION OF**
21 │ her individual and official capacities; and  │        **EMOTIONAL DISTRESS**
DOES 1-100 inclusive,
22 │                                  │
                  Defendants.      │ **DEMAND FOR JURY TRIAL**
23

24

25

26

27

28

-1-
**COMPLAINT FOR DAMAGES**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ........................................................................................................ 2

II.    PARTIES AND JURISDICTION ............................................................................... 2

III.   GENERAL ALLEGATIONS ...................................................................................... 6

IV.    FIRST CAUSE OF ACTION .................................................................................... 13

       42 U.S.C. § 1983 ..................................................................................................... 13

V.     SECOND CAUSE OF ACTION .............................................................................. 17

       *MONELL* LIABILITY PURSUANT TO 42 U.S.C. § 1983 .......................................... 17

VI.    THIRD CAUSE OF ACTION ................................................................................... 20

       DANGEROUS CONDITION ON PUBLIC PROPERTY [GOV. CODE § 835] ........................ 20

VII.   FOURTH CAUSE OF ACTION ............................................................................... 22

       NEGLIGENCE ......................................................................................................... 22

VIII.  FIFTH CAUSE OF ACTION .................................................................................... 23

       NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ....................................... 23

IX.    PRAYER FOR RELIEF ............................................................................................ 25

X.     DEMAND FOR JURY TRIAL ................................................................................. 25

-i-

**COMPLAINT FOR DAMAGES**

1    Plaintiffs ARDELL MCDUFFIE, DANIEL CESARIO RAMIREZ, and DEMETRIUS ROGERS
2    (collectively, "Plaintiffs), by and through their attorneys, Shegerian & Associates, Inc., hereby file this
3    Complaint against Defendants CALIFORNIA DEPARTMENT OF CORRECTIONS AND
4    REHABILITATION; STATE OF CALIFORNIA; CDCR SECRETARY RALPH DIAZ, in his
5    individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS, in her individual and official
6    capacities; KERRY OGLESBY, in her individual and official capacities; and DOES 1-100 inclusive,
7    (collectively, "Defendants"), and states as follows:

8                                    **I.      INTRODUCTION**

9    1.      Plaintiffs are and/or were inmates at the California Rehabilitation Center ("CRC") in
10   Norco, California in Riverside County when the novel coronavirus disease 2019 ("COVID-19") began
11   spreading at SQSP. All Plaintiffs contracted COVID-19 while housed at CRC and continue to have
12   lingering symptoms since recovering from COVID-19.

13   2.      Despite the danger of the spread of COVID-19 at CRC, Defendants failed to implement
14   policies and procedures to prevent the spread of COVID-19 in CRC.

15                             **II.    PARTIES AND JURISDICTION**

16   3.      Plaintiffs ARDELL MCDUFFIE, DANIEL CESARIO RAMIREZ, and DEMETRIUS
17   ROGERS are persons who, at all times relevant to this Complaint, were domiciled in California and were
18   inmates at the California Rehabilitation Center ("CRC") in Norco, California, within Riverside County.

19   4.      Plaintiffs are informed and believe and thereon allege that Defendant STATE OF
20   CALIFORNIA (hereinafter "STATE") is responsible for the actions, omissions, policies, procedures,
21   practices, and customs of its various employees, agents and agencies, including the CALIFORNIA
22   DEPARTMENT OF CORRECTIONS AND REHABILITATION (hereinafter "CDCR"), and their
23   agents and employees, and are sued pursuant to the California Tort Claims Act, California Government
24   Code sections 910, *et seq.* for the acts and omissions of the individually named and fictitiously named
25   public employees and agents, and each of them. At all times relevant to the acts alleged herein, Defendant
26   STATE was responsible for assuring that the actions, omissions, policies, procedures, practices and
27   customs of the CDCR, their employees and agents, as well as its own employees and agents, complied
28   with the laws of STATE of California and the Constitution of the United States.

5.      Plaintiffs are informed and believe and thereon allege that Defendant CDCR is the chief law enforcement agency for Defendant STATE. Defendant CDCR is also in charge of, and responsible for, the prison housing of all persons convicted of crimes, serving a state prison sentence.

6.      The CDCR operates and manages STATE prison facilities, and is, and was at all times mentioned herein, responsible for the actions and/or inactions and the policies, procedures and practices/customs of CRC. By incarcerating individuals and depriving them of the ability to care for and protect themselves, CDCR created and maintained a special relationship with its inmates and is responsible for ensuring the safety of the inmates incarcerated or detained in its facilities.

7.      Plaintiffs are informed and believe and thereon allege that Defendant, RALPH DIAZ ("DIAZ"), is an individual domiciled in California, and was, at all times relevant hereto, employed as the Secretary of the CDCR, acting under the color of law and in the course and scope of his employment for Defendant STATE. He was charged by law and was responsible for the administration of Defendant CDCR and for the supervision, training and hiring of persons, agents and employees working within CDCR, including but not limited to wardens and correctional officers. Defendant DIAZ is and was responsible for the promulgation of the policies and procedures and allowances of the practices/customs pursuant to which the acts of the employees of CRC alleged herein were committed. Defendant DIAZ was responsible to ensure appropriate staffing levels for custodial staff were maintained at the prison facilities. Defendant DIAZ and the other defendants have been deliberately indifferent to the danger of the spread of coronavirus disease 2019 ("COVID-19") within CRC, at least in part, by exceedingly inadequate inmate classification procedures, and inadequate employee screening procedures. As a result of this deliberate indifference, as in this case, Plaintiffs were exposed to COVID-19. Defendant DIAZ is being sued in his individual and official capacities.

8.      Defendant CYNTHIA Y. TAMPKINS ("TAMPKINS") is, and was at all relevant times mentioned herein, Warden of the California Institution for Men. Defendant TAMPKINS is and was responsible for the training and supervision of all CRC employees and/or agents. Defendant TAMPKINS is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the employees of CRC alleged herein were committed. Defendant TAMPKINS was responsible to ensure appropriate staffing levels for custodial staff were

1    maintained at CRC she commanded. Defendant TAMPKINS and the other defendants have been
2    deliberately indifferent to the danger of the spread of COVID-19 within CIM, at least in part, by
3    exceedingly inadequate inmate classification procedures, and inadequate employee screening procedures.
4    As a result of this deliberate indifference, as in this case, Plaintiffs were exposed to COVID-19. Defendant
5    TAMPKINS is being sued in her individual and official capacities.

6       9.      Defendant KERRY OGLESBY ("OGLESBY") is, and was at all relevant times mentioned
7    herein, the healthcare Chief Executive Officer of CRC. Defendant OGLESBY is and was responsible for
8    the training and supervision of all medical staff and nurses at CRC. Defendant OGLESBY is and was
9    responsible for the promulgation of the policies and procedures and allowance of the practices/customs
10   pursuant to which the acts of the employees of CRC alleged herein were committed. Defendant
11   OGLESBY was responsible to ensure appropriate medical care and safe protocols for containing the
12   spread of infectious diseases were maintained at CRC. Defendant OGLESBY and the other defendants
13   have been deliberately indifferent to the danger of the spread of COVID-19 within CRC, at least in part,
14   by exceedingly inadequate inmate classification procedures, and inadequate employee screening
15   procedures. As a result of this deliberate indifference, as in this case, Plaintiffs were exposed to COVID-
16   19. Defendant OGLESBY is being sued in her individual and official capacities.

17      10.     At all times mentioned herein, Defendants DOES 1-20 were employed as Corrections
18   Officers for Defendant STATE, and will be referred to in this Complaint as "Corrections Officer
19   Defendants." Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES
20   1-20, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this
21   complaint to allege their true names when ascertained. Defendants DOES 1-20 are sued individually and
22   in their capacity as corrections deputies for STATE. As part of their duties, Corrections Officer
23   Defendants DOES 1-20 screened and classified inmates and determined where they should be housed,
24   whether they should be housed with other inmates, and other classification decisions. By engaging in the
25   conduct described here, Corrections Officer Defendants DOES 1-20 acted under the color of law and in
26   the course and scope of their employment for Defendant STATE. By engaging in the conduct described
27   here, Corrections Officer Defendants DOES 1-20 exceeded the authority vested in them as corrections
28   deputies under the United States Constitution and as employees of STATE. Corrections Officer

-4-
**COMPLAINT FOR DAMAGES**

1　Defendants DOES 1-20 and the other defendants have been deliberately indifferent to the danger of the
2　spread of COVID19 within CRC, at least in part, by exceedingly inadequate inmate classification
3　procedures. As a result of this deliberate indifference, as in this case, Plaintiffs were exposed to COVID-
4　19. Corrections Officer Defendants DOES 1-20 are being sued in their individual and official capacities.

5　　　　11.　　　At all times mentioned herein, Defendants DOES 21-30 were employed as healthcare
6　providers, for Defendant STATE, and will be referred to in this Complaint as "Healthcare Provider
7　Defendants." Included in those duties was determination of whether inmates suffered from contagious
8　illnesses, who would require segregation from other inmates to prevent the spread of illness among
9　inmates within CRC. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein
10　as DOES 21-30, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will
11　amend this complaint to allege their true names when ascertained. Healthcare Provider Defendants DOES
12　21-30 are sued individually and in their capacity as healthcare providers for STATE. By engaging in the
13　conduct described here, Healthcare Provider Defendants DOES 21-30 acted under the color of law and
14　in the course and scope of their employment for Defendant STATE. By engaging in the conduct described
15　here, Healthcare Provider Defendants DOES 21-30 exceeded the authority vested in them as prison
16　healthcare providers under the United States Constitution and as employees of STATE. Healthcare
17　Provider Defendants DOES 21-30 and the other defendants have been deliberately indifferent to the
18　danger of the spread of COVID-19 within CRC, at least in part, by exceedingly inadequate efforts and
19　procedures to determine whether inmates suffered from contagious illnesses, who would require
20　segregation from other inmates to prevent the spread of illness among inmates within the jails. As a result
21　of this deliberate indifference, as in this case, Plaintiffs were exposed to COVID-19. Healthcare Provider
22　Defendants DOES 21-30 are being sued in their individual and official capacities.

23　　　　12.　　　Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES
24　31-50, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this
25　complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe
26　and thereon allege that each of these fictitiously named Defendants is responsible in some manner for the
27　occurrences herein alleged, and that Plaintiffs injuries as herein alleged were proximately caused by the
28　aforementioned Defendants. Defendants DOES 31-50 are sued individually and in their capacity as

**COMPLAINT FOR DAMAGES**

1    employees for STATE. By engaging in the conduct described here, Defendants DOES 31-50 acted under

2    the color of law and in the course and scope of their employment for Defendant STATE. By engaging in

3    the conduct described here, Defendants DOES 31-50 exceeded the authority vested in them under the

4    United States Constitution and as employees of STATE. DOES 31-50 and the other defendants have been

5    deliberately indifferent to the danger of the spread of COVID-19 within CRC. As a result of this deliberate

6    indifference, as in this case, Plaintiffs were exposed to COVID-19. Defendants DOES 31-50 are being

7    sued in their individual and official capacities.

8        13.    Plaintiffs are informed and believe and thereon allege that at all times herein mentioned

9    each of the Defendants was the agent and employee of each of the remaining Defendants and, in doing

10   the things hereinafter alleged, were acting within the course and scope of such agency and employment.

11       14.    Venue is proper pursuant to Code of Civil Procedure sections 394 and 395 because CRC

12   is located within this district, the action complained of herein occurred in this district, and all other

13   Defendants are located in the district.

14                        **III.    GENERAL ALLEGATIONS**

15       15.    The California Rehabilitation Center is a state prison located in Norco, California, with a

16   capacity of housing approximately 2,491 inmates.

17       16.    In December 2019, a new strain of Coronavirus known as COVID-19 was first observed

18   in humans in China. The virus quickly spread through China and Asia and has caused a global pandemic.

19   Infection with COVID-19 is generally associated with symptoms such as fever, a dry cough, shortness of

20   breath, infection, pneumonia, and it can be fatal.

21       17.    Clinicians and public health experts continue to learn more about the virus and its effects

22   on the human body. The virus is primarily spread by contact with virus-laden respiratory droplets expelled

23   while speaking, coughing, or sneezing. In addition to the cold- and flu-like symptoms, COVID-19

24   patients typically experience, the virus has been linked to loss of taste and smell, blood clots, severe

25   strokes, heart inflammation, cardiac arrest, acute kidney disease, intestinal damage, liver damage,

26   neurological problems, and even death.

27       18.    Research also shows that controlling the spread of COVID-19 is made even more difficult

28   because of the prominence of asymptomatic transmission-infection transmission by people who are

contagious but exhibit limited or no symptoms, rendering any screening tools dependent on identifying symptomatic behavior ineffective.

19.     COVID-19 has been especially dangerous in areas of close confinement, such as cruise ships and assisted living facilities. It follows that prisons are particularly vulnerable to an outbreak. In fact, prisons are at an even greater risk because of their close quarters and communal living spaces.

20.     On January 30, 2020, the World Health Organization declared COVID-19 a global health emergency.

21.     On March 4, 2020, Governor Gavin Newsom declared a State of Emergency to make additional resources available, formalize emergency actions already underway across multiple state agencies and departments, and help STATE prepare for broader spread of COVID-19.

22.     Because of this looming disaster, on or about March 23, 2020, the Centers for Disease Control and Prevention ("CDC") published guidance for correctional and detention facilities to prepare and protect inmates and personnel from the COVID-19 pandemic. The CDC's guidance included the following advice for preventing the spread of COVID-19 in a correctional or detention facility:

- Perform pre-intake screening and temperature checks for all new entrants. Screening should take place in the sallyport, before beginning the intake process, in order to identify and immediately place individuals with symptoms under medical isolation;

- Facilities should ensure the availability of sufficient stocks of hygiene supplies, cleaning supplies, personal protective equipment ("PPE"), and medical supplies that are consistent with the facility's healthcare capabilities (this includes liquid soap, alcohol-based hand sanitizer with at least 60% alcohol, PPE including facemasks and gloves, and supplies for testing, such as sterile viral transport media and sterile swabs);

- Facilities should make contingency plans in the event of PPE shortages;

- Facilities should provide a no-cost supply of soap to incarcerated/detained persons, sufficient to allow frequent hand washing;

- Facilities should provide alcohol-based hand sanitizer containing at least 60% alcohol;

- Facilities should adhere to CDC recommendations for cleaning and disinfecting during the COVID-19 response, including cleaning and disinfecting frequently touched surfaces

-7-
**COMPLAINT FOR DAMAGES**

1    several times per day;

2    • Facilities should encourage all persons in the facility to protect themselves by practicing
3    good cough etiquette and good hand hygiene and avoiding touching of the eyes, nose, or
4    mouth;

5    • Facilities should encourage these behaviors by posting signs throughout the facility and
6    communicating the information verbally on a regular basis;

7    • Facilities should implement physical distancing strategies to increase the physical space
8    between incarcerated/detained persons, ideally six feet between all individuals, regardless of
9    the presence of symptoms (this should include enforcing increased space between
10   individuals in holding cells and waiting areas, staggering time in recreation spaces,
11   staggering meals and rearranging seating in the dining hall to increase space between
12   individuals, liming the size of group activities, and rearranging housing spaces to increase
13   space between individuals); and

14   • Facilities should provide inmates with information and consistent updates about COVID-19
15   and its symptoms.

16       23.    Despite the danger at CRC of the spread of COVID-19, Defendants failed to implement
17   policies and procedures to prevent the spread of COVID-19 in CRC, including, but not limited to, failing
18   to limit the numbers of inmates housed together, so as to create sufficient physical distancing space,
19   failing to release low-level offender inmates who were eligible for early release to create space in CRC
20   sufficient to allow for physical distancing (situating one's self at least six feet away from other
21   individuals) failing to provide inmates with facial masks, failing to adequately keep the interiors of CRC
22   clean and disinfected, failing to provide sufficient disinfecting cleaners, and cleaning apparatuses, failing
23   to provide alcohol based hand sanitizer, failing to provide antibacterial soaps and cleansers, failing to
24   require CRC employees to wear face masks, failing to require CRC employees to engage in frequent
25   hand-washing and/or hand sanitizing. Defendants knew of the risk of serious harm to Plaintiffs and were
26   deliberately indifferent to that risk, disregarding it by failing to take reasonable measures to address it.

27       24.    According to data provided by Defendant CDCR, there were no reported positive cases of

28

**COMPLAINT FOR DAMAGES**

COVID-19 until June 8, 2020.[1]

25. As of April 16, 2020, reports surfaced that CRC had 72 confirmed cases of COVID-19, of which 51 were inmates and 21 were staff. According to statistics provided by Defendant CDCR, this was the largest outbreak of COVID-19 among all state prisons in California.[2]

26. Despite the danger in CRC of the spread of COVID-19, Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 did not conduct an analysis of CRC records to identify particularly vulnerable inmates, in order to release them, or segregate them to prevent them being exposed to the virus.

27. Despite the danger at CRC of the spread of COVID-19, Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 did not conduct an analysis of CRC population to determine whether there are any low-level offender inmates who might be eligible for early release, so that such inmates may be released from CRC to create additional space to allow for physical distancing.

28. Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100, failed to implement policies and procedures to adequately screen for COVID-19. Defendants knew of the risk of serious harm to Plaintiffs and were deliberately indifferent to that risk, disregarding it by failing to take reasonable measures to address that risk.

29. Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 failed to implement policies and procedures to adequately screen for COVID-19 newly admitted individuals who were being brought into CRC for housing. Defendants knew of the risk of serious harm to Plaintiffs and were deliberately indifferent to that risk, disregarding it by failing to take reasonable measures to address it.

---

[1] https://www.cdcr.ca.gov/covid19/population-status-tracking/ (last accessed January 30, 2021).

[2] *Id.*

30. Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 failed to implement policies and procedures to adequately screen for COVID-19 inmates who were housed in close proximity to other inmates. Defendants knew of the risk of serious harm to Plaintiffs and were deliberately indifferent to that risk, disregarding it by failing to take reasonable measures to address that risk.

31. Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 failed to implement policies and procedures to adequately screen for COVID-19 among existing inmates who were going to be re-housed in either different cells, tanks, units, or dorms, and/or existing inmates who were going to be re-housed at CRC or another facility of STATE. Defendants knew of the risk of serious harm to Plaintiffs, and were deliberately indifferent to that risk, disregarding it by failing to take reasonable measures to address it.

32. Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 failed to implement policies and procedures to adequately screen for COVID-19 among CRC employees and/or agents, who would be entering the facility on a daily basis, and who would come into contact with other CRC employees and/or agents, as well as CRC inmates themselves. Defendants knew of the risk of serious harm to Plaintiffs, and were deliberately indifferent to that risk, disregarding it by failing to take reasonable measures to address it.

33. Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 failed to adequately screen for COVID-19 during the classification process of newly-arrested individuals who were being brought into CRC for housing.

34. Healthcare Provider Defendants DOES 21-30 failed to adequately determine whether inmates had COVID-19, and would require segregation from other inmates to prevent the spread of virus among inmates within the jails. Healthcare Provider Defendants knew of the risk of serious harm to Plaintiffs, and were deliberately indifferent to that risk, disregarding it by failing to take reasonable

1    measures to address it.

2        35.    Defendants housed inmates who were ostensibly ill with inmates who were not ill, showed
3    no signs of illness, and had not been tested for COVID-19.

4        36.    Plaintiffs complained to Defendants DOES 31-50 when an ostensibly sick inmate was
5    brought in to be housed in their housing units. Plaintiffs asked Defendants DOES 31-50 why a sick inmate
6    was being housed with them. Defendants DOES 31-50 responded with deliberate indifference, refusing
7    to desegregate inmates with and without COVID-19 symptoms.

8        37.    Plaintiffs, and other inmates who felt sick, requested to see medical staff because they felt
9    ill, and had symptoms consistent with COVID-19. Healthcare Provider Defendants DOES 21-30 and
10   Defendants DOES 31-50 would either ignore Plaintiffs, or they would tell Plaintiffs they needed to submit
11   a medical slip request. In many cases, Defendants DOES 31-50 would not collect the slips in a timely
12   manner. When Plaintiffs and other inmates submitted requests to see medical staff, there was a delay for
13   several days, and in some cases weeks, between when the request was made, and when Healthcare
14   Provider Defendants DOES 21-30 actually responded. Healthcare Provider Defendants DOES 21-30 and
15   Defendants DOES 31-50 knew, and had reason to know, that Plaintiffs were in need of immediate medical
16   care but failed to take reasonable actions to summon such medical care.

17       38.    Plaintiffs and other inmates requested to be tested for COVID-19, but Healthcare Provider
18   Defendants DOES 21-30 refused them tests. Healthcare Provider Defendants DOES 21-30 knew, and had
19   reason to know, that Plaintiffs were in need of immediate medical care but failed to take reasonable
20   actions to summon such medical care.

21       39.    Plaintiffs and other inmates at CRC have been exposed to COVID-19 and suffered harm
22   due to the acts and omissions of Defendants committed with deliberate indifference to the well-being of
23   Plaintiffs.

24       **a.  Plaintiff ARDELL MCDUFFIE'S ("MCDUFFIE") exposure to COVID-19 and**
25   **ongoing harm:** MCDUFFIE tested positive for COVID-19 on July 1, 2020. Since mid-June 2020,
26   MCDUFFIE has been experiencing COVID-19-related symptoms, including loss of taste, difficulty
27   breathing, and wheezing. After MCDUFFIE reported these symptoms to the correctional officer, he was
28   not given any medication and was moved to a different facility, one with no circulation and or sanitation.

**COMPLAINT FOR DAMAGES**

1  Defendants have failed to provide MCDUFFIE with adequate personal protective equipment and have
2  prevented MCDUFFIE from maintaining physical distancing between inmates.

3       **b. Plaintiff DANIEL CESARIO RAMIREZ'S ("RAMIREZ") exposure to COVID-19**
4  **and ongoing harm:** RAMIREZ tested positive for COVID-19 on July 10, 2020 and has been
5  experiencing symptoms such as body aches, congestion, headache, and sinus pain. After testing positive
6  for COVID-19 and requesting medical attention for his severe allergies, RAMIREZ was not provided
7  any medical attention until two weeks later. CRC did not implement appropriate physical distancing
8  measures, and non-prisoner staff and officers did not wear masks. Defendants' failure to provide
9  appropriate safeguards and deliberate indifference for the lives and well-being of RAMIREZ and other
10  inmates resulting in dozens of confirmed cases in RAMIREZ'S dorm alone.

11       **c. Plaintiff DEMETRIUS ROGERS' ("ROGERS") exposure to COVID-19 and**
12  **ongoing harm:** ROGERS tested positive for COVID-19 on July 6, 2020 and has been experiencing
13  symptoms such as headaches, shortness of breath, and loss of taste and smell. ROGERS has still not
14  regained his sense of taste and smell. ROGERS also has the underlying condition asthma, of which CRC
15  was aware. After testing positive for COVID-19 and informing medical staff that he was having difficulty
16  breathing, particularly because of his known underlying asthma condition, ROGERS was not provided
17  medical attention and was not seen by a doctor. CRC, TAMPKINS, and OGLESBY failed to provide
18  appropriate personal protective equipment to ROGERS and forced him to continue living in close
19  quarters, making it impossible to maintain social distancing.

20      40. As a direct and proximate result of Defendants' acts and omissions, as described above,
21  Plaintiffs were exposed to COVID-19 while incarcerated in CRC.

22      41. As a direct and proximate result of the acts and/or omissions of Defendants in exposing
23  Plaintiffs to actual risk of immediate physical injury, Plaintiffs became ill, suffering from fever, chills,
24  cough, shortness of breath, difficulty breathing, fatigue, muscle and body aches, headache, loss of taste,
25  loss of smell, sore throat, congestion, runny nose, nausea, vomiting, diarrhea, and persistent pain and
26  pressure in the chest. In addition, Plaintiffs have suffered injuries and emotional distress of the nature and
27  type that reasonable persons would suffer under the circumstances alleged in this Complaint, including,
28  but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation

1  and shame.

2      42.    Plaintiffs were traumatized by the fear of developing COVID-19 due to their confinement
3  in prison 24 hours per day, where adequate measures were not being taken to prevent the spread of the
4  virus.

5      43.    Furthermore, as public health experts and physicians learn more about the myriad ways
6  COVID-19 attacks and damages the body, Plaintiffs develop new and evolving medical fears and
7  uncertainties that require and will continue to require medical diagnostic exams.

8      44.    On September 18, 2020, Plaintiffs exhausted their administrative remedies.

9      45.    Between October 7, 2020, and January 8, 2021, Plaintiffs filed timely claims and appeals
10  for damages with Defendant STATE pursuant to the applicable sections of the California Government
11  Code § 900, *et seq.*

12      46.    Defendant STATE rejected Plaintiffs' claims between December 14, 2020 and
13  December16, 2020.

14  <center>**IV.    FIRST CAUSE OF ACTION**</center>
15  <center>**42 U.S.C. § 1983**</center>

16      47.    Plaintiffs re-allege and incorporate by reference all previous allegations as though set forth
17  in full herein.

18  <center>**Conditions of Confinement—Eighth Amendment**</center>

19      48.    42 U.S.C. § 1983 provides that any person or persons who, under color of state law,
20  deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United
21  States shall be liable to the injured party.

22      49.    Under the Eighth Amendment, a convicted prisoner has the right to be free from "cruel
23  and unusual punishments."

24      50.    At all times relevant, Plaintiffs faced a substantial risk of serious harm, and a serious
25  medical need.

26      51.    Defendants were deliberately indifferent to those risks and medical needs. Defendants
27  knew of the risks and medical needs and disregarded those risks and needs by failing to take reasonable
28  measures to address them. The Supreme Court has recognized that officials may not be "deliberately

<center>-13-</center>
<center>**COMPLAINT FOR DAMAGES**</center>

1    indifferent to the exposure of inmates to a serious, communicable disease." (*Helling v. McKinney*

2    symptoms." (*Id.*; see also *Hutto v. Finney* (1978) 437 U.S. 678, 682 (finding Eighth Amendment violation

3    and noting incarcerated people were placed in conditions where infectious diseases could spread easily).)

4    Failure to prevent the spread of a contagious illness constitutes deliberate indifference to a serious medical

5    need. (See *Hutto*, supra, 437 U.S. at 682; *Gates v. Collier* (5th Cir. 1974) 501 F.2d 1291, 1300, 1303

6    (holding plaintiffs entitled to relief under Eighth Amendment due to, among other conditions, allowing

7    "inmates with serious contagious diseases ... to mingle with the general prison population"). It is well

8    established that the Government may not "ignore a condition of confinement that is sure or very likely to

9    cause serious illness." (*Helling, supra*, 509 U.S. at 33. See *Brown v. Plata* (2011) 563 U.S. 493, 508-09,

10   519-20 (affirming population reduction order and citing findings that "[o]vercrowding had increased the

11   incidence of infectious disease" in California prisons, and that crowded living quarters "where large

12   numbers of prisoners may share just a few toilets and showers [were] 'breeding grounds for disease'").)

13       52.     As a direct and proximate result of Defendants' acts and omissions, as described above,

14   Plaintiffs were exposed to COVID-19 while incarcerated in CRC.

15       53.     As a direct and proximate result of the acts and/or omissions of Defendants in exposing

16   Plaintiffs to actual risk of immediate physical injury, Plaintiffs became ill, suffering from fever, chills,

17   cough, shortness of breath, difficulty breathing, fatigue, muscle and body aches, headache, loss of taste,

18   loss of smell, sore throat, congestion, runny nose, nausea, vomiting, diarrhea, and persistent pain and

19   pressure in the chest. In addition, Plaintiffs have suffered injuries and emotional distress of the nature and

20   type that reasonable persons would suffer under the circumstances alleged in this Complaint, including,

21   but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation

22   and shame.

23       54.     Plaintiffs were traumatized by the fear of developing COVID-19 due to their confinement

24   in prison 24 hours per day, where inadequate measures were being taken to prevent the

25       55.     Furthermore, as public health experts and physicians learn more about the myriad ways

26   COVID-19 attacks and damages the body, Plaintiffs develop new and evolving medical fears and

27   uncertainties that require and will continue to require medical diagnostic exams.

28       56.     The conduct of Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his

1  individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; OGLESBY KERRY

2  OGLESBY; and DOES 1-100 was oppressive, and Defendants acted with reckless and callous

3  indifference to the federally protected rights of others. As such, Defendants' actions justify an award of

4  punitive damages in an amount to be determined at the time of trial.

5  **Conditions of Confinement—Fourteenth Amendment**

6  57.  42 U.S.C. § 1983 provides that any person or persons who, under color of state law,

7  deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United

8  States shall be liable to the injured party.

9  58.  Defendants failed to provide safe conditions of confinement in CRC. The Supreme Court

10  has recognized that officials may not be "deliberately indifferent to the exposure of inmates to a serious,

11  communicable disease." (*Helling v. McKinney* (1993) 509 U.S. 25, 33.) This is true even when "the

12  complaining inmate shows no serious current symptoms." (Id; see also *Hutto v. Finney* (1978) 437 U.S.

13  678, 682 (finding Eighth Amendment violation and noting incarcerated people were placed in conditions

14  where infectious diseases could spread easily).) Failure to prevent the spread of a contagious illness

15  constitutes deliberate indifference to a serious medical need. (See *Hutto*, supra, 437 U.S. at 682; *Gates v.*

16  *Collier* (5th Cir. 1974) 501 F.2d 1291, 1300, 1303 (holding plaintiffs entitled to relief under Eighth

17  Amendment due to, among other conditions, allowing "inmates with serious contagious diseases ... to

18  mingle with the general prison population"). It is well established that the Government may not "ignore

19  a condition of confinement that is sure or very likely to cause serious illness." (*Helling, supra,* 509 U.S.

20  at 33, See *Brown v. Plata* (2011) 563 U.S. 493, 508, 09, 519-20 ( affirming population reduction order

21  and citing findings that "[o]vercrowding had increased the incidence of infectious disease" in California

22  prisons, and that crowded living quarters "where large numbers of prisoners may share just a few toilets

23  and showers [were] 'breeding grounds for disease'").)

24  59.  Defendants made an intentional decision regarding the conditions under which Plaintiffs

25  were confined.

26  60.  The conditions of confinement put Plaintiffs at substantial risk of suffering serious harm.

27  61.  Defendants did not take reasonable available measures to abate or reduce the risk of

28  serious harm, even though a reasonable officer under the circumstances would have understood the high

1  degree of risk involved-making the consequences of Defendants' conduct obvious.

2  62.  As a direct and proximate result of Defendants' acts and omissions, as described above,
3  Plaintiffs were exposed to COVID-19 while incarcerated in CRC.

4  63.  As a direct and proximate result of the acts and/or omissions of Defendants in exposing
5  Plaintiffs to actual risk of immediate physical injury, Plaintiffs became ill, suffering from fever, chills,
6  cough, shortness of breath, difficulty breathing, fatigue, muscle and body aches, headache, loss of taste,
7  loss of smell, sore throat, congestion, runny nose, nausea, vomiting, diarrhea, and persistent pain and
8  pressure in the chest. In addition, Plaintiffs have suffered injuries and emotional distress of the nature and
9  type that reasonable persons would suffer under the circumstances alleged in this Complaint, including,
10  but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation
11  and shame.

12  64.  Plaintiffs were traumatized by the fear of developing COVID-19 due to their confinement
13  in prison 24 hours per day, where inadequate measures were being taken to prevent the

14  65.  Furthermore, as public health experts and physicians learn more about the myriad ways
15  COVID-19 attacks and damages the body, Plaintiffs develop new and evolving medical fears and
16  uncertainties that require and will continue to require medical diagnostic exams.

17  66.  The conduct of Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his
18  individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and
19  DOES 1-100 was oppressive, and Defendants acted with reckless and callous indifference to the federally
20  protected rights of others. As such, Defendants' actions justify an award of punitive damages in an
21  amount to be determined at the time of trial.

22  67.  As a direct and proximate result of Defendants' acts and omissions, as described above,
23  Plaintiffs were exposed to COVID-19 while incarcerated in CRC.

24  68.  As a direct and proximate result of the acts and/or omissions of Defendants in exposing
25  Plaintiffs to actual risk of immediate physical injury, Plaintiffs became ill, suffering from fever, chills,
26  cough, shortness of breath, difficulty breathing, fatigue, muscle and body aches, headache, loss of taste,
27  loss of smell, sore throat, congestion, runny nose, nausea, vomiting, diarrhea, and persistent pain and
28  pressure in the chest. In addition, Plaintiffs have suffered injuries and emotional distress of the nature and

1   type that reasonable persons would suffer under the circumstances alleged in this Complaint, including,

2   but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation

3   and shame.

4      69.     Plaintiffs were traumatized by the fear of developing COVID-19 due to their confinement

5   in prison 24 hours per day, where inadequate measures were being taken to prevent the spread of the

6   virus.

7      70.     Furthermore, as public health experts and physicians learn more about the myriad ways

8   COVID-19 attacks and damages the body, Plaintiffs develop new and evolving medical fears and

9   uncertainties that require and will continue to require medical diagnostic exams.

10      71.     The conduct of Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his

11   individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and

12   DOES 1-100 was oppressive, and Defendants acted with reckless and callous indifference to the federally

13   protected rights of others. As such, Defendants' actions justify an award of punitive damages in an

14   amount to be determined at the time of trial.

15   <div align="center">**V.    SECOND CAUSE OF ACTION**</div>

16   <div align="center">*MONELL* **LIABILITY PURSUANT TO 42 U.S.C. § 1983**</div>

17      72.     Plaintiffs re-allege and incorporate by reference all previous allegations as though set forth

18   in full herein.

19      73.     Defendants, by and through their supervising and managerial employees, agents, and

20   representatives, deprived Plaintiffs of the rights and liberties secured to them by the Fourth Amendment

21   of the United States Constitution by acting with gross negligence and reckless, deliberate indifference to

22   the rights and liberties of Plaintiffs and persons in their class, situation, and comparable position.  In

23   particular, Defendants knowingly maintained, enforced, and applied an official, recognized set of CDCR

24   customs, policies, and practices that:

25        • Failed to provide a no-cost supply of soap to incarcerated/detained persons, sufficient to allow

26          frequent hand washing;

27        • Failed to provide alcohol-based hand sanitizer containing at least 60% alcohol;

28        • Failed to adhere to CDC recommendations for cleaning and disinfection during the COVID-19

response, including cleaning and disinfecting frequently touched surfaces several times per day;

• Failed to encourage all persons in the facility to protect themselves by practicing good cough etiquette and good hand hygiene and avoiding touching of the eyes, nose, or mouth;

• Failed to encourage these behaviors by posting signs throughout the facility and regularly communicating that information verbally;

• Failed to implement physical distancing strategies to increase the physical space between incarcerated/detained persons (ideally 6 feet between all individuals, regardless of the presence

• Failed to provide inmates with information and consistent updates about COVID-19 and its symptoms;

• Failed to test inmates for COVID-19, and segregate inmates who test positive from other inmates;

• Failed to test new incoming inmates for COVID-19, and segregate those who test positive from other inmates;

• Housing ostensibly sick inmates with inmates who were not sick and who had not tested positive for COVID-19;

• Placing inmates who had had contact with inmates who later tested positive for COVID- 19 with inmates who were ostensibly sick, or who tested positive for COVID-19; and

• Failing to promptly and adequately test CRC employees for COVID-19 before allowing the employees to enter CRC and spread the virus.

74.     By reason of the aforementioned policies and practices of Defendants, Plaintiffs have contracted COVID-19, and have suffered severe pain and suffering, mental anguish, humiliation, and emotional distress.

75.     Defendants, together, with various other officials, whether named, or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs, alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated, and through actions and inactions thereby ratified such policies. Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiffs, and other individuals similarly situated.

76.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants acted with intentional, reckless, and callous disregard for the well-being of Plaintiffs, and their constitutional and human rights. Defendants and each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

77.     Furthermore, these policies, practices and customs implemented and maintained and still tolerated by Defendants were affirmatively linked to and were a significantly influential force behind Plaintiffs' injuries.

78.     Accordingly, Defendants each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

79.     As a direct and proximate result of Defendants' acts and omissions, as described above, Plaintiffs were exposed to COVID-19 while incarcerated in CRC.

80.     As a direct and proximate result of the acts and/or omissions of Defendants in exposing Plaintiffs to actual risk of immediate physical injury, Plaintiffs became ill, suffering from fever, chills, cough, shortness of breath, difficulty breathing, fatigue, muscle and body aches, headache, loss of taste, loss of smell, sore throat, congestion, runny nose, nausea, vomiting, diarrhea, and persistent pain and pressure in the chest. In addition, Plaintiffs have suffered injuries and emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

81.     Plaintiffs were traumatized by the fear of developing COVID-19 due to their confinement in prison 24 hours per day, where inadequate measures were being taken to prevent the spread of the virus.

82.     Furthermore, as public health experts and physicians learn more about the myriad ways COVID-19 attacks and damages the body, Plaintiffs develop new and evolving medical fears and uncertainties that require and will continue to require medical diagnostic exams.

///

///

1

2

3

## VI.   THIRD CAUSE OF ACTION

## DANGEROUS CONDITION ON PUBLIC PROPERTY

### [GOV. CODE § 835]

4       83.     Plaintiffs re-allege and incorporate by reference all previous allegations as though set forth

5   in full herein.

6       84.     Defendants owned, ran, operated, or controlled CRC.

7       85.     CIM was in a dangerous condition at all times mentioned in this Complaint. CRC has

8   individual small, cells with two to four inmate bunk style beds per cell and/or dorm rooms, which housed

9   over forty inmates in a single room, with bunk style beds approximately three feet apart in distance

10  between the beds. The above-described conditions made it impossible for inmates to practice physical

11  distancing by maintaining six feet of distance from other inmates. Prison cells with individual, small,

12  cells with two to four inmate bunk style beds per cell were especially dangerous because Plaintiffs were

13  locked in extremely close quarters with other inmates, which made it impossible to avoid other inmates'

14  virus-laden droplets expelled while speaking, coughing, or sneezing. Prison cells with dorm rooms, which

15  housed over 40 inmates in a single room, with bunk style beds approximately three feet apart in distance

16  between the beds, were also dangerous because Plaintiffs were locked in a room with over 40 inmates,

17  which made it impossible to avoid other inmates' virus-laden droplets expelled while speaking, coughing,

18  or sneezing.

19      86.     The dangerous condition created a reasonably foreseeable risk of the kind of injury that

20      87.     The negligent or wrongful conduct of Defendants acting within the scope of their

21  employment created the dangerous condition.

22      88.     The Defendants had notice of the dangerous condition for a long enough time to have

23  protected against it.

24      89.     As a direct and proximate result of Defendants' acts and omissions, as described above,

25  Plaintiffs were exposed to COVID-19 while incarcerated in CRC.

26      90.     As a direct and proximate result of the acts and/or omissions of Defendants in exposing

27  Plaintiffs to actual risk of immediate physical injury, Plaintiffs became ill, suffering from fever, chills,

28  cough, shortness of breath, difficulty breathing, fatigue, muscle and body aches, headache, loss of taste,

**COMPLAINT FOR DAMAGES**

loss of smell, sore throat, congestion, runny nose, nausea, vomiting, diarrhea, and persistent pain and pressure in the chest. In addition, Plaintiffs have suffered injuries and emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

91.     Plaintiffs were traumatized by the fear of developing COVID-19 due to their confinement in prison 24 hours per day, where inadequate measures were being taken to prevent the spread of the virus.

92.     Furthermore, as public health experts and physicians learn more about the myriad ways COVID-19 attacks and damages the body, Plaintiffs develop new and evolving medical fears and uncertainties that require and will continue to require medical diagnostic exams.

93.     The dangerous condition was a substantial factor in causing Plaintiffs' harm.

94.     Defendant STATE is liable for the acts of Defendants pursuant to Government Code § 815.2(a), which provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

95.     Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 are liable pursuant to Government Code section 844.6(d), which provides that nothing in Section 844.6 exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission.

96.     The conduct of Defendants CDCR; STATE; CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 was oppressive, and in reckless disregard of Plaintiffs' rights. As such, Defendants' actions justify an award of punitive damages in an amount to be determined at the time of trial.

///

///

-21-
**COMPLAINT FOR DAMAGES**

## VII.    FOURTH CAUSE OF ACTION

### NEGLIGENCE

97.     Plaintiffs re-allege and incorporate by reference all previous allegations as though set forth in full herein.

98.     The Defendants owned Plaintiffs a duty of care to protect them from the risk of contracting COVID-19 while incarcerated in CRC.

99.     The Defendants breached their duty owed to Plaintiffs.

100.     As a direct and proximate result of Defendants' acts and omissions, as described above, Plaintiffs were exposed to COVID-19 while incarcerated in CRC.

101.     As a direct and proximate result of the acts and/or omissions of Defendants in exposing Plaintiffs to actual risk of immediate physical injury, Plaintiffs became ill, suffering from fever, chills, cough, shortness of breath, difficulty breathing, fatigue, muscle and body aches, headache, loss of taste, loss of smell, sore throat, congestion, runny nose, nausea, vomiting, diarrhea, and persistent pain and pressure in the chest. In addition, Plaintiffs have suffered injuries and emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

102.     Plaintiffs were traumatized by the fear of developing COVID-19 due to their confinement in prison 24 hours per day, where inadequate measures were being taken to prevent the spread of the virus.

103.     Furthermore, as public health experts and physicians learn more about the myriad ways COVID-19 attacks and damages the body, Plaintiffs develop new and evolving medical fears and uncertainties that require and will continue to require medical diagnostic exams.

104.     STATE and CDCR's employees' negligence was a substantial factor in causing Plaintiffs' harm.

105.     Defendant STATE is liable for the acts of Defendants pursuant to Government Code § 815.2(a), which provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would,

-22-

### COMPLAINT FOR DAMAGES

1  apart from this section, have given rise to a cause of action against that employee or his personal
2  representative.

3      106.     Defendants CDCR SECRETARY RALPH DIAZ, in his individual and official capacities;
4  WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 are liable pursuant to
5  Government Code section 844.6(d), which provides that nothing in Section 844.6 exonerates a public
6  employee from liability for injury proximately caused by his negligent or wrongful act or omission.

7      107.     Defendants are liable pursuant to Government Code section 845.6, which provides that a
8  public entity and a public employee are liable if the employee knows or has reason to know that a prisoner
9  is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

10     108.     The conduct of Defendants CDCR SECRETARY RALPH DIAZ, in his individual and
11 official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 was
12 oppressive, and in reckless disregard of Plaintiffs' rights. As such, Defendants' actions justify an award
13 of punitive damages in an amount to be determined at the time of trial.

14                          **VIII.   FIFTH CAUSE OF ACTION**

15                   **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

16     109.     Plaintiffs re-allege and incorporate by reference all previous allegations as though set forth
17 in full herein.

18     110.     Defendants knew or should have known of the actual risk of a viral outbreak of COVID-
19 19 in CRC. Defendants knew or should have known that it was especially dangerous to expose Plaintiffs
20 to COVID-19.

21     111.     Nevertheless, Defendants acts and/or omissions, as described above, created a dangerous
22 and threatening environment in which Plaintiffs were forced to live for month after month, at all times
23 directly at risk of becoming infected with, made ill by, and/or spreading COVID-19.

24     112.     As the direct and proximate result of Defendants' actions and omissions, Plaintiffs were
25 in the "zone of danger," where they were at immediate risk of actual physical harm, including the potential
26 of contracting COVID-19, suffering from the illness-including experiencing shortness of breath,
27 coughing, body aches, fever, and/or any number of yet-to-be identified future ailments, such as liver
28 damage, kidney failure, or blood clotting- and potentially death as a result of the virus.

113.    As a direct and proximate result of the acts and/or omissions of Defendants in exposing Plaintiffs to actual risk of immediate physical injury, Plaintiffs became ill, suffering from fever, chills, cough, shortness of breath, difficulty breathing, fatigue, muscle and body aches, headache, loss of taste, loss of smell, sore throat, congestion, runny nose, nausea, vomiting, diarrhea, and persistent pain and pressure in the chest. In addition, Plaintiffs have suffered injuries and emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

114.    Plaintiffs were traumatized by the fear of developing COVID-19 due to their confinement in prison 24 hours per day, where inadequate measures were being taken to prevent the spread of the virus.

115.    Furthermore, as public health experts and physicians learn more about the myriad ways COVID-19 attacks and damages the body, Plaintiffs develop new and evolving medical fears and uncertainties that require and will continue to require medical diagnostic exams.

116.    Defendant STATE is liable for the acts of Defendants pursuant to Government Code § 815.2(a), which provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

117.    Defendants CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 are liable pursuant to Government Code section 844.6(d), which provides that nothing in Section 844.6 exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission.

118.    Defendants are liable pursuant to Government Code section 845.6, which provides that a public entity and a public employee are liable if the employee knows or has reason to know that a prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

119.    The conduct of Defendants CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 was

oppressive, and in reckless disregard of Plaintiffs' rights. As such, Defendants' actions justify an award of punitive damages in an amount to be determined at the time of trial.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ARDELL MCDUFFIE, DANIEL CESARIO RAMIREZ, and DEMETRIUS ROGERS pray for judgment against Defendants as follows:

1.    For damages according to proof;

2.    For interest as allowed by law;

3.    For reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

4.    For costs of suit incurred by Plaintiffs; and

5.    For punitive damages in an amount appropriate to punish Defendants CDCR SECRETARY RALPH DIAZ, in his individual and official capacities; WARDEN CYNTHIA Y. TAMPKINS; KERRY OGLESBY; and DOES 1-100 and deter others from engaging in similar misconduct.

## X.    DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury in this case.

Dated: March 29, 2021                    **SHEGERIAN & ASSOCIATES, INC.**

By:    _Carney R. Shegerian_
       Carney R. Shegerian

Attorneys for Plaintiffs ARDELL
MCDUFFIE, DANIEL CESARIO
RAMIREZ, and DEMETRIUS ROGERS

-25-
**COMPLAINT FOR DAMAGES**

COPY

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Carney R. Shegerian, Esq. (SBN 150461)<br>Shegerian & Associates, Inc.<br>145 S. Spring Street, Suite 400, Los Angeles, California 90012<br>TELEPHONE NO.: (310)860-0770   FAX NO.: (310)860-0771<br>ATTORNEY FOR *(Name):* Plaintiffs, Ardell McDuffie; Daniel Cesario Ramirez; and Demetrius Rogers | F I L E D<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF RIVERSIDE<br><br>MAR 2 9 2021<br><br>L. VILLANUEVA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Riverside
STREET ADDRESS: 4050 Main St.
MAILING ADDRESS: 4050 Main St.
CITY AND ZIP CODE: Riverside, CA 92501
BRANCH NAME: Riverside Historic Courthouse

CASE NAME:
McDuffie, et al. v. California Department of Corrections and Rehabilitation, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>*(Cal. Rules of Court, rule 3.402)* | | CVRI 2101568<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | *(Cal. Rules of Court, rules 3.400–3.403)* |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [X] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties         d. [X] Large number of witnesses
   b. [X] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve                 in other counties, states, or countries, or in a federal court
   c. [X] Substantial amount of documentary evidence             f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action *(specify):* Five (5) causes of action
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 29, 2021

Carney R. Shegerian, Esq.
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

# COPY

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

☐ BANNING 311 E. Ramsey St., Banning, CA 92220
☐ BLYTHE 265 N. Broadway, Blythe, CA 92225
☐ HEMET 880 N. State St., Hemet, CA 92543
☐ MORENO VALLEY 13800 Heacock St., Ste. D201, Moreno Valley, CA 92553

☐ MURRIETA 30755-D Auld Rd., Suite 1226, Murrieta, CA 92563
☐ PALM SPRINGS 3255 E. Tahquitz Canyon Way, Palm Springs, CA 92262
☒ RIVERSIDE 4050 Main St., Riverside, CA 92501

RI-CI032

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar Number and Address)*<br>Carney R. Shegerian, Esq. (SBN 150461)<br>Shegerian & Associates, Inc.<br>145 S. Spring Street, Suite 400<br>Los Angeles, California 90012<br><br>TELEPHONE NO: (310)860-0770    FAX NO. *(Optional)*: (310)860-0771<br>E-MAIL ADDRESS *(Optional)*: CShegerian@shegerianlaw.com<br>ATTORNEY FOR *(Name)*: Plaintiffs, Ardell McDuffie; Daniel Cesario Ramirez; and Demetrius Rogers | *FOR COURT USE ONLY*<br><br>F I L E D<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF RIVERSIDE<br><br>MAR 2 9 2021<br><br>L. VILLANUEVA |
|---|---|
| PLAINTIFF/PETITIONER: Ardell McDuffie; Daniel Cesario Ramirez; and Demetrius Rogers | |
| DEFENDANT/RESPONDENT: California Department of Corrections and Rehabilitation, et al | CASE NUMBER:<br>**CVRI** 2101568 |
| **CERTIFICATE OF COUNSEL** | |

The undersigned certifies that this matter should be tried or heard in the court identified above for the reasons specified below:

☒    The action arose in the zip code of:    92860 _____

☐    The action concerns real property located in the zip code of:    _____

☒    The Defendant resides in the zip code of:    92860 _____

For more information on where actions should be filed in the Riverside County Superior Courts, please refer to Local Rule 1.0015 at www.riverside.courts.ca.gov.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date    March 29, 2021 _____

Carney R. Shegerian, Esq. _____
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY MAKING DECLARATION)

►    _____
(SIGNATURE)

Approved for Mandatory Use
Riverside Superior Court
RI-CI032 [Rev. 08/15/13]

CERTIFICATE OF COUNSEL

Page 1 of 1
Local Rule 1.0015
riverside.courts.ca.gov/localrules/localrules.shtml

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501

**Case Number:**   CVRI2101568

**Case Name:**   MCDUFFIE vs CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION

Carney Richard Shegerian
145 SOUTH SPRING STREET, SUITE 400
LOS ANGELES, CA 90012

## NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| 06/07/2021 | 8:30 AM | Department 6 |
| Location of Hearing: | | |
| 4050 Main Street, Riverside, CA 92501 | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.




| | |
|---|---|
| | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
| | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
Historic Court House
4050 Main Street, Riverside, CA 92501

**Case Number:**   CVRI2101568

**Case Name:**   MCDUFFIE vs CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION

## NOTICE OF DEPARTMENT ASSIGNMENT

The above entitled case is assigned to the Honorable Sunshine Sykes in Department 6 for All Purposes.

Any disqualification pursuant to CCP section 170.6 shall be filed in accordance with that section.

The court follows California Rules of Court, Rule 3.1308(a)(1) for tentative rulings (see Riverside Superior Court Local Rule 3316). Tentative Rulings for each law and motion matter are posted on the internet by 3:00 p.m. on the court day immediately before the hearing at http://riverside.courts.ca.gov/tentativerulings.shtml. If you do not have internet access, you may obtain the tentative ruling by telephone at (760) 904-5722.

To request oral argument, you must (1) notify the judicial secretary at (760) 904-5722 and (2) inform all other parties, no later than 4:30 p.m. the court day before the hearing. If no request for oral argument is made by 4:30 p.m., the tentative ruling will become the final ruling on the matter effective the date of the hearing.

The filing party shall serve a copy of this notice on all parties.

| | |
|---|---|
|  | Interpreter services are available upon request. If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/interpreterinfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
|  | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided. Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation. A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation. (Civil Code section 54.8.) |

Dated: 04/06/2021

W. SAMUEL HAMRICK JR.,
Court Executive Officer/Clerk of Court

by: *L. Villanueva*

L. Villanueva, Deputy Clerk

CI-NODACV
(Rev. 03/16/21)

RI-ADR001-INFO



SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
www.riverside.courts.ca.gov

**Self-represented parties:** http://riverside.courts.ca.gov/selfhelp/self-help.shtml

---

## ALTERNATIVE DISPUTE RESOLUTION (ADR) – *INFORMATION PACKAGE*

### *** THE PLAINTIFF MUST SERVE THIS INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT. ***

### What is ADR?
Alternative Dispute Resolution (ADR) is a way of solving legal disputes without going to trial. The main types are mediation, arbitration, and settlement conferences.

### Advantages of ADR:
- Faster: ADR can be done in a 1-day session within months after filing the complaint.
- Less expensive: Parties can save court costs and attorneys' and witness fees.
- More control: Parties choose their ADR process and provider.
- Less stressful: ADR is done informally in private offices, not public courtrooms.

### Disadvantages of ADR:
- No public trial: Parties do not get a decision by a judge or jury.
- Costs: Parties may have to pay for both ADR and litigation.

### Main Types of ADR:

**Mediation:** In mediation, the mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to create a settlement agreement that is acceptable to everyone. If the parties do not wish to settle the case, they go to trial.

Mediation may be appropriate when the parties:
- want to work out a solution but need help from a neutral person; or
- have communication problems or strong emotions that interfere with resolution; or
- have a continuing business or personal relationship.

Mediation is not appropriate when the parties:
- want their public "day in court" or a judicial determination on points of law or fact;
- lack equal bargaining power or have a history of physical/emotional abuse.

**Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration the arbitrator's decision is final; there is no right to trial. In "non-binding" arbitration, any party can request a trial after the arbitrator's decision. The court's mandatory Judicial Arbitration program is non-binding.

Adopted for Mandatory Use
Riverside Superior Court
RI-ADR001-INFO [Rev. 01/01/12]
(Reformatted 06/01/16)

Arbitration may be appropriate when the parties:
- want to avoid trial, but still want a neutral person to decide the outcome of the case.

Arbitration is not appropriate when the parties:
- do not want to risk going through both arbitration and trial (Judicial Arbitration)
- do not want to give up their right to trial (binding arbitration)

**Settlement Conferences:** Settlement conferences are similar to mediation, but the settlement officer usually tries to negotiate an agreement by giving strong opinions about the strengths and weaknesses of the case, its monetary value, and the probable outcome at trial. Settlement conferences often involve attorneys more than the parties and often take place close to the trial date.

### RIVERSIDE COUNTY SUPERIOR COURT ADR REQUIREMENTS
ADR Information and forms are posted on the ADR website: http://riverside.courts.ca.gov/adr/adr.shtml

**General Policy:**
Parties in most general civil cases are expected to participate in an ADR process before requesting a trial date and to participate in a settlement conference before trial. (Local Rule 3200)

**Court-Ordered ADR:**
Certain cases valued at under $50,000 may be ordered to judicial arbitration or mediation. This order is usually made at the Case Management Conference. See the "Court-Ordered Mediation Information Sheet" on the ADR website for more information.

**Private ADR (for cases not ordered to arbitration or mediation):**
Parties schedule and pay for their ADR process without Court involvement. Parties may schedule private ADR at any time; there is no need to wait until the Case Management Conference. See the "Private Mediation Information Sheet" on the ADR website for more information.

**BEFORE THE CASE MANAGEMENT CONFERENCE (CMC), ALL PARTIES MUST:**
1. Discuss ADR with all parties at least 30 days before the CMC. Discuss:
   - Your preferences for mediation or arbitration.
   - Your schedule for discovery (getting the information you need) to make good decisions about settling the case at mediation or presenting your case at an arbitration.
2. File the attached "Stipulation for ADR" along with the Case Management Statement, if all parties can agree.
3. Be prepared to tell the judge your preference for mediation or arbitration and the date when you could complete it.

<center>(Local Rule 3218)</center>

**RIVERSIDE COUNTY ADR PROVIDERS INCLUDE:**
- The Court's Civil Mediation Panel (available for both Court-Ordered Mediation and Private Mediation). See http://adr.riverside.courts.ca.gov/civil/panelist.php or ask for the list in the civil clerk's office, attorney window.
- Riverside County ADR providers funded by DRPA (Dispute Resolution Program Act):
  Dispute Resolution Service (DRS) Riverside County Bar Association: (951) 682-1015
  Dispute Resolution Center, Community Action Partnership (CAP): (951) 955-4900

Adopted for Mandatory Use
Riverside Superior Court
RI-ADR001-INFO [Rev. 01/01/12]
(Reformatted 06/01/16)

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**

| ☐ BLYTHE 265 N. Broadway, Blythe, CA 92225 | ☐ PALM SPRINGS 3255 Tahquitz Canyon Way, Palm Springs, CA 92262 |
|---|---|
| ☐ MURRIETA 30755-D Auld Rd., Ste. 1226, Murrieta, CA 92563 | ☐ RIVERSIDE 4050 Main St., Riverside, CA 92501 |

RI-ADR001

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar Number and Address) | FOR COURT USE ONLY |
|---|---|
| | |

TELEPHONE NO:  FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

| PLAINTIFF/PETITIONER: | |
|---|---|
| | CASE NUMBER: |
| DEFENDANT/RESPONDENT: | |
| | CASE MANAGEMENT CONFERENCE DATE(S): |

**STIPULATION FOR ALTERNATIVE DISPUTE RESOLUTION (ADR)**
(CRC 3.2221; Local Rule, Title 3, Division 2)

**Court-Ordered ADR:**
Eligibility for Court-Ordered Mediation or Judicial Arbitration will be determined at the Case Management Conference. If eligible, the parties agree to participate in:

☐ Mediation        ☐ Judicial Arbitration (non-binding)

**Private ADR:**
If the case is not eligible for Court-Ordered Mediation or Judicial Arbitration, the parties agree to participate in the following ADR process, which they will arrange and pay for without court involvement:

☐ Mediation        ☐ Judicial Arbitration (non-binding)
☐ Binding Arbitration    ☐ Other (describe): _____

Proposed date to complete ADR: _____

**SUBMIT THIS FORM ALONG WITH THE CASE MANAGEMENT STATEMENT.**

| (PRINT NAME OF PARTY OR ATTORNEY)<br>☐ Plaintiff  ☐ Defendant | (SIGNATURE OF PARTY OR ATTORNEY) | (DATE) |
|---|---|---|
| (PRINT NAME OF PARTY OR ATTORNEY)<br>☐ Plaintiff  ☐ Defendant | (SIGNATURE OF PARTY OR ATTORNEY) | (DATE) |
| (PRINT NAME OF PARTY OR ATTORNEY)<br>☐ Plaintiff  ☐ Defendant | (SIGNATURE OF PARTY OR ATTORNEY) | (DATE) |
| (PRINT NAME OF PARTY OR ATTORNEY)<br>☐ Plaintiff  ☐ Defendant | (SIGNATURE OF PARTY OR ATTORNEY) | (DATE) |

Page 1 of 1

Adopted for Mandatory Use
Riverside Superior Court
Form RI-ADR001 [Rev. 01/01/12]
[Reformatted 06/01/18]

**ALTERNATIVE DISPUTE RESOLUTION**
**(ADR) STIPULATION**

Statutory Authority
riverside.courts.ca.gov/localforms/localforms.shtml

# CERTIFICATE OF SERVICE

Case Name: **Ardell McDuffie, et al. v. California Department of Corrections and Rehabilitation, et al.**

Case No.: **5:21-cv-00824**

I hereby certify that on <u>May 10, 2021</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a); REQUEST FOR SCREENING ORDER UNDER 28 U.S.C. § 1915A(a); AND REQUEST FOR EXTENSION OF TIME**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>May 10, 2021</u>, at Sacramento, California.

| M. Garcia | /s/ M. Garcia |
|-----------|---------------|
| Declarant | Signature |

SA2021301891
35081155.docx